UNITED STATED DISTRICT COURT

OF

DISTRICT OF COLUMBIA

**JUNIUS J. JOYNER, III,**

       Plaintiff.

vs.

**MORRISON & FOERSTER LLP**

&

**MESTEL & COMPANY NEW YORK LLC**

       Defendant.

Case: 1:20-cv-01440   JURY DEMAND
Assigned To : Kelly, Timothy J.
Assign. Date : 5/29/2020
Description: Employ. Discrim. (H-DECK)

**COMPLAINT & JURY DEMAND**

## COMPLAINT

### I. INTRODUCTION

1. This is an action for racial and sex discrimination, and wrongful discharge brought under Title VII of the Civil Rights Act of 1964 (the, "Act"), as amended.  Plaintiff is an African-American male citizen of the United States of America and is a member of a class of persons protected from discrimination in his employment under 42 U.S.C.A §2000e-2(a)(2).  Plaintiff seeks actual, compensatory, punitive, and non-pecuniary damages, and attorney fees.

### II. PARTIES

2. Plaintiff, Junius J. Joyner, III, Esq., was a resident of the State of Virginia at the time his claims arose and presently maintains a residence in Woodbridge, Virginia.    Plaintiff was employed in Washington D.C. by Defendants from July 1, 2019, until his unlawful discharge on December 12, 2019.


RECEIVED
Mail Room

MAY 2 9 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

3. Defendant, Morrison & Foerster LLP ("Mofo"), is a limited-liability-partnership headquartered in San Francisco, California, and claims made within this Complaint arose at Defendant's place of business located at 2000 Pennsylvania Avenue, N.W. Washington D.C. 20006.    Mofo is a global law firm that provides legal advice in multiple practice areas that includes antitrust law.

4. Defendant, Mestel & Company New York LLC, also known as Hire Counsel and Mestel & Company ("Hire Counsel"), is a limited-liability-corporation headquartered in New York, New York, and maintains a place of business at 1990 K Street Suite 400, Washington D.C. 20006. Hire Counsel is a professional staffing firm that places attorneys with law firms throughout the country.

## III. JURISDICTION AND VENUE

5. Jurisdiction is proper in this district because Plaintiff alleges violations of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e-2.    Plaintiff also alleges antitrust violations under the Sherman Antitrust of Act of 1890, as amended, 15 U.S.C. §§ 1-38. This court also has authority to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to adjudicate state claims arising out of the common nucleus of operative facts that give rise to Plaintiff's federal claims.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the jurisdiction of the United States District Court for the District of Columbia.

## III. PROCEDURAL REQUIREMENTS

7. A Charge of Employment Discrimination was filed with the Equal Employment Opportunity Office ("EEOC") within 180 days of the commission of the continuing unfair employment

2

practices. Plaintiff received a Notification of Right to Sue each Defendant on March 3, 2020 and March 6, 2020, respectively. This Complaint has been filed within 90 days of receipt of both Notification of Right to Sue letters. A copy of both Right to Sue letters are attached as Plaintiff Exhibit 1.

8. All jurisdictional prerequisites for this lawsuit have been fulfilled and Plaintiff has exhausted his administrative remedies as required by law.

## IV. COMMON FACTS TO ALL DEFENDANTS

9. Defendants are both engaged in industries that affect commerce and both employ more than 15 employees each.

10. Plaintiff was hired on July 1, 2019 by Defendant Hire Counsel to work as antitrust counsel at Mofo's Washington D.C. office. Defendant Mofo was engaged in representing Sprint Corporation in its proposed merger with T-Mobile U.S. Inc. and Plaintiff was brought on to provide integration management advice and counsel, and litigation support.

11. From the beginning of Plaintiff's employment until his wrongful discharge, Defendants controlled the means and manner of his work performance and both Defendants meet the necessary requirements to be considered Joint Employers under EEOC guidance.

## V. SPECIFIC FACTS TO EACH DEFENDANT

### A. MOFO DISCRIMINATORY FACTS

12. On July 1, 2019, Plaintiff's first day of work at Mofo offices, Plaintiff met his supervising attorney, associate Evan M. Harris. On this date Mr. Harris provided Plaintiff's initial Integration Management training. During such training Mr. Harris provided background on the wireless telecommunications industry. During training Mr. Harris, who Plaintiff believes to be

Caucasian or an otherwise a non-protected class member, referred to prepaid wireless customers as having "low class" or "lower class" than postpaid wireless customers.  Mr. Harris knew at the time of this statement a majority or large number of prepaid customers were African-American.

13.  Mr. Harris' discriminatory statement was designed to intimidate, ridicule, and insult the Plaintiff who is an African-American.  Mr. Harris' comments were unwelcomed and boldly made because Plaintiff is African-American.  In fact, at the time of this discriminatory statement Plaintiff was a prepaid wireless subscriber.

14.  These statements were so severe as to alter Plaintiff's working conditions and was the start of a Hostile Working Environment as interpreted under the Act.

15.  Mofo is responsible for Mr. Harris' statements and actions under theory of vicarious or direct liability.

16.  Although Plaintiff started working on the Integration Management team on July 1, 2019, Plaintiff was not assigned to a work team as was customary for team members until on or about September 20, 2019.  Not being assigned to a workflow team for more than two months was a daily reminder and evidence of the disparate treatment Plaintiff received that differed from Caucasian or non-protected class members.

17.  This treatment was so severe and pervasive as to alter Plaintiff's working conditions and continued the Hostile Working Environment at Mofo's offices.

18.  Upon starting at Mofo, Plaintiff was initially assigned to a conference room that contained three other attorneys all of whom are believed to be of Caucasian or otherwise non-protected class members.  During this time Plaintiff was subjected to several direct and indirect forms of racism by these attorneys.   By way of example, Plaintiff was called "Boy" on one occasion and had to endure racist conversations about how white college students posing with rifles in front of

Emmett Till's memorial was "stupid" because the white students had posted a photo on social media and had been suspended.  Plaintiff believes the tone and spirit of this conversation suggested the abhorrent, disgraceful, and racist behavior that these students displayed was not the problem, only the failure to show anonymity was the issue. This conversation, and others, were an indirect attempt to intimidate, ridicule and embarrass the Plaintiff because of his race and color.

19.  An African-American secretary whose workspace was close enough in proximity to the conference room to overhear conversations, asked Plaintiff how he could stand to be in that room.  Although Mr. Harris' office was closer in proximity than this secretary, these racist conversations were not stopped, thereby giving license and fertile soil to continue.

20.  Mofo's failure to police, cease, or otherwise remedy this objectively hostile and abusive environment gave rise to the actionable conduct under the Act.

21.  Because this conference room was so racially toxic, Plaintiff, in or around September 20, 2019, to avoid further intimidation, moved to another conference room on the sixth floor.

22.  However, Plaintiff continued to experience disparate treatment and the hostile work environment continued in the form of constant harassment by a Caucasian female co-worker. ("Co-Worker 1") Plaintiff was subjected to daily harassment by Co-Worker 1 who alleged unsubstantiated complaints about Plaintiff.   Plaintiff has indirect and direct evidence Co-Worker 1's motivation for this harassment was because Plaintiff was an African-American male.

23.  Although this female co-worker's actions were unfounded and her own conduct in question, Mofo's response to this racially motivated harassment was to cast Plaintiff as some type of predator.

24.  Plaintiff was told by Mrs. Natalie A. Fleming Nolen, Mofo Partner, not to appear in any

areas were Co-Worker1 was present.   Additionally, another female co-worker whom the Plaintiff

had a good working relationship was removed from Plaintiff's work area.   These actions sent a

clear message to Plaintiff and his colleagues the firm believed and treated Plaintiff as some type

of predator to women.

25.  Not only did Mofo fail to remedy the sexual and racial harassment perpetrated on the

Plaintiff because of his race, color, and sex, the actions and policy instituted by Mofo gave Co-

Worker 1 license and authority to continue this discriminatory behavior.  Plaintiff was effectively

isolated and marginalized by the policy enacted by Mofo partners and associates.

26.  In fact the authority that Mofo gave Co-Worker 1 to harass and intimidate the Plaintiff

continued long after Co-Worker 1 was terminated for false accusations against the Plaintiff.

Plaintiff subsequently found himself embroiled in frivolous lawsuits brought Co-Worker 1 that

continued until March 2020.

27.  These acts and omissions by Mofo partners and associates related to the discriminatory

harassment unleashed on the Plaintiff were so severe as to alter Plaintiff's working conditions

and continued the Hostile Working Environment as interpreted under the Act.

28.  In late November 2019 Plaintiff began investigating possible antitrust violations that had

occurred during the ongoing Integration Management efforts between Sprint Corporation and T-

Mobile U.S. Inc.  Plaintiff had been employed by Mofo and Hire Counsel to provide this exact

type of counsel and advice.

29.  Plaintiff did ultimately uncover antitrust violations and brought this discovery to the

attention of Mr. Harris, Theresa Oehm, Mofo associate, and Roxann E. Henry, Mofo partner.

Upon providing this information to Mofo leadership, Plaintiff did not receive any further

communication from Mofo about this serious violation but was summarily discharged within a

week of reporting this violation.

30.  Plaintiff was never told why he was wrongful discharged, but he believes it was in retaliation for jeopardizing the 26-billion-dollar merger between Sprint Corporation and T-Mobile U.S. Inc., on the eve of its approval.

31.  Any reason Mofo would subsequently offer for justification for Plaintiff's discharge, other than for exceptionally performing his duties as antitrust counsel for Sprint Corporation, would be a pretext for the underlying cause of jeopardizing or exposing a valued client, Sprint Corporation, and Mofo's valued professional reputation, to liability and unwanted scrutiny.

32.  Plaintiff was forced to endure yet one final act of intimidation, humiliation, and embarrassment when he reported to work the morning of December 12, 2019. Although, through information and belief, Mofo was aware and could have informed Plaintiff that he was being discharged at least as early as the afternoon of December 11, 2019, Mofo failed to inform Plaintiff that he had been discharged.

33.  Mofo's failure to inform Plaintiff created a foreseeable event whereby Plaintiff was escorted by security from Mofo office space and surrounded and confronted by security while he tried desperately to determine why he was not able to access his place of business.

34.  Due to the direct and indirect actions and omissions of Mofo, Plaintiff on December 12, 2019 was subjected to further humiliation, intimidation, embarrassment because of his race and color.

## B. HIRE COUNSEL DISCRIMINATORY FACTS

35.  Paragraphs 1 through 34 above are repeated, realleged and incorporated here by this reference.

36.  Plaintiff alerted Patti Ayala, Hire Counsel, Vice President of Human Resources, who is

believed to be Caucasian or otherwise a non-protected class member, of previously alleged discrimination cited in para 18-20 here within. Although unfounded claims brought by Co-Worker 1 against Plaintiff were thoroughly vetted and multiple colleagues were interviewed, Plaintiff's valid complaints were dismissed and not given the same level of scrutiny.

37. The failure of Hire Counsel to investigate Plaintiff's claims and follow similar investigative procedures and policies as was required for Co-Worker 1's complaint amounted to disparate treatment because of the Plaintiff's race and color.

38. This grievous omission failed to remedy the toxic racial environment that existed at Mofo's Washington D.C. offices and were so severe as to alter Plaintiff's working conditions and continued the abusive hostile working environment.

39. Hire Counsel is responsible for Mrs. Ayala's failure to investigate and remedy Plaintiff's allegations under theory of vicarious or direct liability.

40. On or about November 17, 2019 and November 18, 2019, realleging incidents and circumstances in para 21-27, Plaintiff again was subjected to disparate and racial discrimination because his race and color. Around this time Plaintiff was forced to defend a frivolous lawsuit brought by Co-Worker 1 in the Superior Court of the District of Columbia.

41. Plaintiff, in effort to not inadvertently violate a court order, requested and received approval from Mofo to work from home until the trial date. However, and although Co-Worker 1 had received previous authorization for a longer period of time to work remotely, Plaintiff's request was denied by Hire Counsel.

42. Moreover, Plaintiff received threatening emails of termination from Mrs. Ayala although Plaintiff's request had already been approved and both Mofo and Hire Counsel had authorized similar or longer remote work for Caucasian or non-protected class members.

43. This disparate treatment that Plaintiff received because of his race and color was so severe as to alter Plaintiff's working conditions and continued the abusive hostile working environment.

44. Plaintiff realleges incidents and circumstances in para 32-34 here within. Hire Counsel's failure to notify Plaintiff of his discharge on December 12, 2019, created a foreseeable event whereby Plaintiff was escorted by security from Mofo office space and surrounded and confronted by security while he tried desperately to determine why he was not able to access his place of business.

45. Due to the direct and indirect actions and omissions of Hire Counsel, Plaintiff on December 12, 2019 was subjected to further humiliation, intimidation, embarrassment because of his race and color.

46. Plaintiff has contacted Hire Counsel's general counsel on multiple occasions and informed him that Plaintiff sought comparable employment but to date Plaintiff has not received any response or offer of comparable employment.

## VI. LIABILITY TO EACH DEFENDANT

### A. MOFO LIABILITY

47. **First Cause of Action - Unlawful Employment Practices 42 U.S.C.A § 2000e-2(a)(2)**

48. Paragraphs 1-34 are repeated, realleged and incorporated here by this reference.

49. Defendant Mofo, acting through its agents and/or employees, violated this statute and caused Plaintiff to suffer discrimination because of his race, color, and sex.

50. As a direct and proximate result of the practices complained of, Plaintiff suffered pecuniary damages in excess of $100,000.

51. As a further direct and proximate result of the conduct of Defendant Mofo, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish,

humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

52.  **Second Cause of Action – Equal Rights Under the Law 42 U.S.C.A § 1981**

53.  Paragraphs 1-34 are repeated, realleged and incorporated here by this reference.

54.  Certain mentioned acts of the Defendant Mofo constitute intentional, malicious, reckless discrimination against Plaintiff because of his race.

55.  As a direct and proximate result of the practices complained of, Plaintiff suffered pecuniary damages in excess of $100,000.

56.  As a further direct and proximate result of the conduct of Defendant Mofo, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

57.  Plaintiff is informed and believes and on that basis alleges that Defendant Mofo, and their managers, officers, and/or directors committed the acts alleged in this Complaint maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights. Moreover, Defendant Mofo, and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice.

58. **Third Cause of Action - Failure to Take Reasonable Steps to Prevent Harassment and Discrimination**

59. Paragraphs 1-34 are repeated, realleged and incorporated here by this reference.

60. Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

61. By the acts and omissions of Defendant Mofo, Plaintiff endured pecuniary and great non-pecuniary damages in excess of $250,000.

62. As a further direct and proximate result of the conduct of Defendant Mofo, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

63. **Fourth Cause of Action – Wrongful Discharge in Violation of Public Policy - Clay v. Howard University, 128 F. Supp. 3d 22 (D.D.C. 2015).**

64. Paragraphs 1-34 are repeated, realleged and incorporated here by this reference.

65. At all materials times, the public policy of the District of Columbia prohibited an employer from retaliating against an employee for opposing violations of a state or federal law, rule, or regulation.

66. This public policy is embodied in the common law and statues of the District of Columbia and the United States including, but not limited to the Code of the District of Columbia §§ 28-4502 and 28-4508.

67.  Defendant Mofo, acting through its agents and/or employees, violated the above public policies by retaliating against Plaintiff for his good faith attempt to bring to light perceived antitrust violations in Mofo's representation of Sprint Corporation on the eve of the telecommunication company's proposed merger with T-Mobile USA Inc.

68.  By the acts and omissions of Defendant Mofo, Plaintiff has been directly and proximately caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, and other pecuniary losses not presently ascertained.

69.  As a further direct and proximate result of the conduct of Defendant Mofo, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

70.  Plaintiff is informed and believes and on that basis alleges that Defendant Mofo, and their managers, officers, and/or directors committed the acts alleged in this Complaint maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights. Moreover, Defendant Mofo, and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice.

**B.  HIRE COUNSEL LIABILITY**

71.  **First Cause of Action - Unlawful Employment Practices 42 U.S.C.A § 2000e-2(a)(2)**

72.  Paragraphs 36-46 are repeated, realleged and incorporated here by this reference.

73.  Defendant Hire Counsel, acting through its agents and/or employees, violated this statute and

caused Plaintiff to suffer discrimination because of his race, color, and sex.

74. As a direct and proximate result of the practices complained of, Plaintiff suffered pecuniary damages in excess of $100,000.

75. As a further direct and proximate result of the conduct of Defendant Mofo, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

76. **Second Cause of Action – Equal Rights Under the Law 42 U.S.C.A § 1981**

77. Paragraphs 36-46 are repeated, realleged and incorporated here by this reference.

78. Certain mentioned acts of the Defendant Hire Counsel constitute intentional, malicious, reckless discrimination against Plaintiff because of his race.

79. As a direct and proximate result of the practices complained of, Plaintiff suffered pecuniary damages in excess of $100,000.

80. As a further direct and proximate result of the conduct of Defendant Hire Counsel, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

81. Plaintiff is informed and believes and on that basis alleges that Defendant Hire Counsel, and their managers, officers, and/or directors committed the acts alleged in this Complaint

maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights. Moreover, Defendant Hire Counsel, and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice.

82.  **Third Cause of Action - Failure to Take Reasonable Steps to Prevent Harassment and Discrimination**

83.  Paragraphs 36-46 are repeated, realleged and incorporated here by this reference.

84.  Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.

85.  By the acts and omissions of Defendant Hire Counsel, Plaintiff endured pecuniary and great non-pecuniary damages in excess of $250,000.

86.  As a further direct and proximate result of the conduct of Defendant Hire Counsel, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety. The exact nature, duration, and extent of Plaintiff's injuries are presently unknown to Plaintiff, but Plaintiff is informed and believes and on that basis alleges that some if not all of the injuries are reasonably certain to be permanent in character.

## VII.  RELIEF REQUESTED

**THEREFORE**, Plaintiff demands that Defendants as Joint Employers be held jointly and severally liable in the First Cause of Action, Second Cause of Action, Third Cause of Action and, Defendant Mofo be held solely liable in the Fourth Cause of Action.   Further, as to all Defendants, Plaintiff asks for the following relief:

1.  Grant Plaintiff a jury trial on all issues of fact;

2.  Award Plaintiff compensatory damages for pecuniary losses, emotional pain, and mental anguish together with attorney fees in accordance with statutes or common law cited within this Complaint;

3.  Award Plaintiff punitive damages and affirmative relief necessary to eradicate the effects of the intentional racial discrimination and wrongful discharge; and

4.  Grant such other relief as the Court may seem just and proper.

Respectfully, this May 29, 2020.

By: _____

Junius Joyner, III, Esq.
Plaintiff *Pro Se,*
2220 Henry Watts Loop
Woodbridge, VA 22191
(202) 674-9612

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the **29**th day of May 2020 a true copy of the **COMPLAINT & JURY DEMAND** was mailed first-class to each Defendant's registered agent separately, **Corporation Service Company, 1090 Vermont Avenue, N.W., Suite #430 Washington D.C. 20005.**

This May 29, 2020.

By: _____

Junius Joyner, III, Esq.
Plaintiff *Pro Se,*
2220 Henry Watts Loop
Woodbridge, VA 22191
(202) 674-9612

16