**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUNIUS J. JOYNER, III,

          *Plaintiff,*

    v.

MORRISON & FOERSTER LLP, *et al.*

          *Defendants.*

Case No. 1:20-cv-1440-TJK

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
UNDER FRCP 12(B)(6) FOR FAILURE TO STATE A CLAIM**

    COME NOW Defendants Morrison & Foerster LLP and Mestel & Company New York LLC, through the undersigned counsel, and respectfully move the Court to dismiss Plaintiff's Complaint in its entirety, in accordance Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, together with such other relief as the Court deems proper and just.  The grounds for this motion are fully set forth in accompanying memorandum of law.  A proposed order is submitted herewith.

    Dated:  August 6, 2020

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
Jose E. Galvan (D.C. Bar. 1024903)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com
jose.galvan@ogletree.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this August 6, 2020, I caused the foregoing to be filed via the Court's CM/ECF system, with a copy to be served by regular mail and electronic mail upon *pro se* Plaintiff as follows:

Junius J. Joyner, III
2220 Henry Watts Loop
Woodbridge, VA 22191
juniusjoyner@yahoo.com



OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com

*Counsel for Defendants*

43791120.1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Junius J. Joyner, III,

        *Plaintiffs,*

     v.

Morrison & Foerster LLP and
Mestel & Company New York LLC,

        *Defendants.*

Case No. 1:20-cv-1440-TJK

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Morrison & Foerster LLP and Mestel & Company New York LLC, by and through the undersigned counsel, respectfully submit this memorandum of points and authorities in support of their motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted.

Dated:  August 6, 2020

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.


 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
Jose E. Galvan (D.C. Bar. 1024903)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com
jose.galvan@ogletree.com

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

LEGAL STANDARD.................................................................................................. 6

ARGUMENT ............................................................................................................ 7

I.  Plaintiff Fails to State a Claim for Discrimination Under Title VII or
    Section 1981.................................................................................................... 7

    A.  Plaintiff Fails to State a Claim for Disparate Treatment Based on
        Race, Color, or Sex................................................................................ 8

    B.  Plaintiff Fails to State a Claim for a Hostile Work Environment Based
        on Race, Color, or Sex........................................................................ 15

        1.  The Alleged Wrongs in the Complaint are not Sufficiently
                Linked to Form a Coherent Hostile Work Environment Claim....................... 16

        2.  Plaintiff's Hostile Work Environment Claim Includes Alleged
                Wrongs That Cannot Be Legally Imputed to Defendants............................... 17

        3.  Plaintiff's Hostile Work Environment Claim Includes Alleged
                Wrongs That Have no Connection to Plaintiff's Race, Color, or
                Sex....................................................................................... 18

        4.  The Alleged Conduct in the Complaint is not Sufficiently Severe
                or Pervasive to Support a Hostile Work Environment Claim.......................... 19

II.  The Complaint Fails to State a Claim for Wrongful Discharge in Violation
     of Public Policy in the District of Columbia. ...................................................... 21

CONCLUSION...................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Dist. of Columbia Gov't,*
   810 F. Supp. 2d 78 (D.D.C. 2011) ........................................................................ 14

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................ 7

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................ 6, 7

*Badibanga v. Howard Univ. Hosp.,*
   679 F.Supp.2d 99 (D.D.C. 2010) ........................................................................ 20

*Baird v. Gotbaum,*
   662 F.3d 1246 (D.C. Cir. 2011).................................................................... 11, 16

*Baird v. Gotbaum,*
   792 F.3d 166 (D.C. Cir. 2015) .............................................................. 16, 20, 21

*Baloch v. Kempthorne,*
   550 F.3d 1191 (D.C. Cir. 2008)..................................................................... 8, 15

*Beaulieu v. Barr,*
   No. 15-cv-896-TJK, 2019 WL 5579968 (D.D.C. Oct. 29, 2019) ..................... 6, 7, 9

*Beckwith v. Ware,*
   174 F. Supp. 3d 1 (D.D.C. 2014) ....................................................................... 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 6, 7

*Bell v. Gonzales,*
   398 F. Supp. 2d 78 (D.D.C. 2005) ..................................................................... 19

*Brown v. Brody,*
   199 F.3d 446 (D.C. Cir. 1999) ............................................................................ 9

*Brown v. Georgetown Univ. Hosp. Medstar Health,*
   828 F. Supp. 2d 1 (D.D.C. 2011) ....................................................................... 15

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................. 6

*Budik v. Howard Univ. Hosp.,*
    986 F. Supp. 2d 1 (D.D.C. 2013) ......................................................................... 9

*Burlington Indus., Inc. v. Ellerth,*
    524 U.S. 742 (1998) ............................................................................................. 9

*Bynum v. Dist. of Columbia,*
    424 F. Supp. 3d 122 (D.D.C. 2020) ..................................................................... 8

*Cancel de Rugg v. West,*
    106 F. Supp. 2d 289 (D.P.R. 2000) .................................................................... 12

*Carl v. Children's Hosp.,*
    702 A.2d 159 (D.C. 1997) .................................................................................. 21

*Carter v. Dist. of Columbia,*
    980 A.2d 1217 (D.C. 2009) ................................................................................ 24

*Childs-Pierce v. Utility Workers Union of Am.,*
    383 F. Supp. 2d 60 (D.D.C. 2005), *aff'd,* 187 F. App'x 1 (D.C. Cir. 2006) ....... 18, 19

*Clay v. Howard Univ.,*
    128 F. Supp. 3d 22 (D.D.C. 2015) ..................................................................... 21

*Cochise v. Salazar,*
    601 F. Supp. 2d 196 (D.D.C. 2009) .................................................................... 14

*Curran v. Holder,*
    626 F. Supp. 2d 30 (D.D.C. 2009) ....................................................................... 7

*Daniel v. Johns Hopkins Univ.,*
    118 F. Supp. 3d 312 (D.D.C. 2015) .................................................................... 19

*Faragher v. City of Boca Raton,*
    524 U.S. 775 (1998) ................................................................................. 6, 15, 16

*Fingerhut v. Children's National Medical Center,*
    738 A.2d 799 (D.C. 1999) ............................................................................. 22, 23

*Forkkio v. Powell,*
    306 F.3d 1127 (D.C. Cir. 2002) ........................................................................... 9

*George v. Leavitt,*
    407 F.3d 405 (D.C. Cir. 2005) ........................................................................... 20

*Goode v. Billington*,
  932 F. Supp. 2d 75 (D.D.C. 2013) ........................................................................ 19

*Harrigan v. Carson*,
  No. 17-cv-930-TJK, 2019 WL 4737119 (D.D.C. Sept. 28, 2019) ............................ 7

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) .............................................................................. 15, 20, 21

*Harris v. Wackenhut Services, Inc.*,
  590 F. Supp. 2d 54 (D.D.C. 2008) ........................................................... 15, 16, 20

*Herron v. Fannie Mae*,
  861 F.3d 160 (D.C. Cir. 2017) ............................................................................... 6

*Hettinga v. United States*,
  677 F.3d 471 (D.C. Cir. 2012) ............................................................................... 7

*Hutchinson v. Holder*,
  668 F. Supp. 2d 201 (D.D.C. 2009) ..................................................................... 13

*Latson v. Holder*,
  82 F. Supp. 3d 377 (D.D.C. 2015) ......................................................................... 5

*LeFande v. Dist. of Columbia*,
  864 F. Supp. 2d 44 (D.D.C. 2012) ....................................................................... 24

*Leyden v. Am. Accreditation Healthcare Comm'n*,
  83 F. Supp. 3d 241 (D.D.C. 2015) ....................................................................... 21

*Liberatore v. Melville Corp.*,
  168 F.3d 1326 (D.C. Cir. 1999).............................................................................. 22

*Massaquoi v. Dist. of Columbia*,
  81 F. Supp. 3d 44 (D.D.C. 2015) ........................................................................... 9

*McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*,
  611 F.3d 1 (D.C. Cir. 2020) ................................................................................... 8

*Moini v. LeBlanc*,
  No. 1:19-cv-03126-TNM, 2020 WL 1975786 (D.D.C. Apr. 24, 2020) .................... 10

*Moore v. Ashcroft*,
  401 F. Supp. 2d 1 (D.D.C. 2005) ....................................................................... 9, 12

*Myers v. Alutiiq Int'l Solutions, LLC*,
  811 F. Supp. 2d 261 (D.D.C. 2011) ..................................................................... 23

*Park v. Howard Univ.,*
    71 F.3d 904 (D.C. Cir. 1995) ................................................................. 19

*Perkins v. WCS Constr., LLC,*
    No. 18-cv-751-RC, 2020 WL 3128950 (D.D.C. June 12, 2020).............................. 24

*Riggs v. Home Builders Inst.,*
    203 F. Supp. 2d 1 (D.D.C. 2002) .......................................................... 23

*Ruifang Hu v. K4 Solutions, Inc.,*
    No. 18-cv-1240-TSC, 2020 WL 1189297 (D.D.C. Mar. 12, 2020).... 8, 15, 18, 19, 20

*Russell v. Principi,*
    257 F.3d 815 (D.C. Cir. 2001) .......................................................... 9, 13

*Singh v. U.S. House of Representatives,*
    300 F. Supp. 2d 48 (D.D.C. 2004) ........................................................ 18

*Sparrow v. United Air Lines, Inc.,*
    216 F.3d 1111 (D.C. Cir. 2000)............................................................. 8

*Stewart v. Evans,*
    275 F.3d 1126 (D.C. Cir. 2002)................................................... 9, 12, 15

*Townsend v. U.S.,*
    236 F. Supp. 3d 280 (D.D.C. 2017) ................................................. 15, 20

*Tyes-Williams v. Whitaker,*
    361 F. Supp. 3d 1 (D.D.C. 2019) .................................................... 13, 15

*Vance v. Ball State Univ.,*
    570 U.S. 421 (2013) ................................................................... 9, 17

*Vasquez v. Whole Foods Mkt., Inc.,*
    302 F. Supp. 3d 36 (D.D.C. 2018) ....................................................... 21

*Vreven v. AARP,*
    604 F. Supp. 2d 9 (D.D.C. 2009) ........................................................ 23

*Ware v. Billington,*
    344 F. Supp. 2d 63 (D.D.C. 2004) ....................................................... 13

*Washington v. Guest Servs.,*
    718 A.2d 1071 (D.C. 1998).............................................................. 22

**Statutes**

15 U.S.C. §§ 1-38 ........................................................................ 23, 24

21 U.S.C. § 333(a)(1) ....................................................................... 22

21 U.S.C. § 351 ............................................................................... 22

42 U.S.C. § 2000e-2(a)(1) ................................................................... 7

42 U.S.C. § 2000e-2(a)(2) ................................................................ 5, 7

42 U.S.C. § 2000e-5(e)(1) .................................................................. 10

42 U.S.C. § 1981 .................................................... 1, 5, 7, 8, 11, 12, 14, 15, 21

D.C. Antitrust Act, D.C. Code § 28-4501 *et seq.* .................................... 23, 24

D.C. Code § 2-2013(a) ...................................................................... 22

D.C. Code § 4-142 ........................................................................... 23

D.C. Code § 4-175 ........................................................................... 23

D.C. Code § 22-704 .......................................................................... 23

D.C. Code § 22-3416 (1996) ................................................................ 22

D.C. Code § 28-4502 .................................................................. 6, 23, 24

D.C. Code § 28-4508 ..................................................................... 6, 24

IRC § 501(c)(3) .............................................................................. 23

IRC § 501(c)(4) .............................................................................. 23

**Other Authorities**

21 C.F.R. § 210.1(b) ........................................................................ 22

21 C.F.R. § 211.142(b) ...................................................................... 22

D.C. Mun. Regs. § 2101.1 (1990) ......................................................... 22

*EEOC Charges and Causes of Action* ....................................................... 5

FRCP 12(b)(6) ............................................................................. 1, 6

## INTRODUCTION

Plaintiff Junius Joyner alleges that he was employed by the legal staffing company Mestel & Company New York LLC ("Mestel") as a contract attorney and assigned to work at the law firm Morrison & Foerster ("MoFo"), where he provided antitrust support for a corporate transaction involving a MoFo client from July 1, 2019 through the involuntary termination of his employment less than six months later.  Plaintiff claims that MoFo terminated his employment because he provided unwelcome antitrust legal advice, and on this basis he asserts a claim against MoFo for wrongful discharge in violation of the public policy of Washington, D.C.[1]  He also claims that, throughout his employment, Defendants acting as joint employers subjected him to discrimination on the basis of his race, color, and sex in violation of Title VII and Section 1981.  As set forth below, the non-conclusory allegations in Plaintiff's Complaint, accepted as true solely for purposes of this motion, fail to support plausible claims for disparate treatment or hostile work environment discrimination under either Title VII or Section 1981, and his public policy claim fares no better.  Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(6) for failure to state a claim.

## BACKGROUND

Defendant Mestel is a professional staffing firm headquartered in New York that, among other things, places attorneys on assignment with law firms.  Compl. ¶ 4.  Defendant MoFo is a California-based global law firm that provides legal services in multiple practice areas, including antitrust law.  *Id.* ¶ 3.  Both Defendants maintain offices in Washington, D.C.  *Id.* ¶¶ 3-4.

---

[1] Defendants understand that Plaintiff has not sought or received authorization to disclose any client information that he received while employed as an attorney at MoFo, the substance of any attorney-client communications or attorney work product, or even the identity of his client.

On July 1, 2019, Mestel hired Plaintiff, an attorney, to work at MoFo's office in Washington D.C.  *Id.* ¶¶ 2, 3, 10.  Plaintiff alleges he was hired to provide antitrust advice and support for a corporate transaction involving a MoFo telecommunications client.  *Id.* ¶ 10.  He contends that Mestel and MoFo jointly controlled the means and manner of his work performance, and were joint employers, until the termination of his employment on December 12, 2019.  *Id.* ¶ 11.  Mr. Joyner is African-American.  *Id.* ¶ 13.

### Alleged statement about prepaid wireless customers

Plaintiff met his alleged supervisor, associate attorney Evan Harris, on July 1, 2019, his first day of work at MoFo.  *Id.* ¶ 12.  Mr. Harris provided Plaintiff with integration management training, which included background on the wireless telecommunications industry.  *Id.* ¶ 12.  According to Plaintiff, Mr. Harris stated during that training that prepaid wireless customers have a "low class" or "lower class" than postpaid wireless customers.  *Id.*  Plaintiff alleges that Mr. Harris knew at the time of this statement that a "majority or large number" of prepaid customers are African-American, that Mr. Harris made this statement *because* Plaintiff is African-American, and that Mr. Harris intended this comment to "intimidate, ridicule, and insult the Plaintiff."  *Id.* ¶ 13.  Plaintiff himself was a prepaid wireless user, but he does not allege that Mr. Harris was aware of that fact.  *Id.*

### Statements in conference room

MoFo initially assigned Plaintiff to work in a conference room with three non-supervisory coworkers outside his protected class.  *Id.* ¶ 18.  He alleges that one of these people called him "boy" on one occasion.  *Id.*  He also alleges that these coworkers discussed how it had been "stupid" for white college students to post pictures of themselves on social media posing with rifles in front of Emmett Till's memorial, with the "tone and spirit" of their conversation suggesting that

the students' only fault had been the failure to conceal their identities.  *Id.*  Plaintiff contends that this conversation was "an indirect attempt to intimidate, ridicule and embarrass" him because of his race and color.  *Id.*  According to Plaintiff, an African-American secretary overheard these conversations and asked how he could stand to be in the room.  *Id.* ¶ 19.  Plaintiff does not allege that Mr. Harris or any other supervisor actually heard these comments.  Instead, he suggests that Mr. Harris *might* have heard these comments because his office was even closer to the conference room than the secretary's workspace.  *Id.*

Plaintiff alleges that he reported these incidents to Mestel's Vice President of Human Resources, but she "dismissed" his complaints and failed to give them the same "level of scrutiny" as complaints raised by a Caucasian female coworker.  *Id.* ¶ 36 (alleging that coworker's complaints were "thoroughly vetted," with "multiple colleagues" interviewed).  Plaintiff contends that this failure to "follow similar investigative procedures and policies" amounted to disparate treatment because of his race and color.  *Id.* ¶ 37.  Nevertheless, Plaintiff concedes that he was moved to a new work location on September 20, 2019 in order to escape the "intimidation" and "racially toxic" atmosphere of the conference room.  *Id.* ¶ 21.

Plaintiff alleges that, although he began working on the Integration Management team on July 1, he was not assigned to a work team as was "customary" for team members until on or about September 20, 2019.  *Id.* ¶ 16.  He claims that this "was a daily reminder and evidence of the disparate treatment [he] received that differed from Caucasian or non-protected class members." *Id.*

***Complaints from a female coworker***

Plaintiff claims that after moving to his new work location, he was subjected to daily harassment in the form of "unsubstantiated complaints" by a Caucasian female coworker.  *Id.* ¶ 22.

He claims that on or about November 17-18, 2019, he was forced to defend himself against a frivolous lawsuit that she brought against him in the Superior Court of the District of Columbia. *Id.* ¶ 40.  In response, a MoFo partner instructed Plaintiff to avoid any areas where she was present, and the firm moved another female coworker out of his work area even though they had a good working relationship.  *Id.* ¶ 24.  Plaintiff contends that this isolated and marginalized him, and it sent a "clear message" to him and his colleagues that the firm regarded him to be "some type of predator to women."  *Id.* ¶¶ 23-25.

In order to avoid inadvertently violating a court order, Plaintiff requested and received permission from MoFo to work remotely until his November trial date.  *Id.* ¶ 41.  He alleges (somewhat unclearly) that he was not allowed to work remotely for as long a period of time as his accuser.  *Id.*  He also claims that Mestel's Vice President of Human Resources threatened to terminate his employment because of his request, even though the request had already been approved and Defendants had authorized longer remote work arrangements for employees outside his protected class.  *Id.* ¶ 42.

Plaintiff alleges that MoFo eventually fired the Caucasian female coworker for making false accusations against him.  *Id.* ¶ 26.  He claims that MoFo somehow gave her "authority" to harass and intimidate him even after terminating her employment, with the consequence that he was "embroiled in [her] frivolous lawsuits" until March 2020.  *Id.* ¶ 26.  Plaintiff claims to have "indirect and direct evidence" that his accuser's conduct was motivated by his race and gender, but he does not include that information in his Complaint.  *Id.* ¶ 22.

***Alleged retaliation for providing unwelcome legal advice***

Plaintiff contends that in late November 2019, he began investigating possible antitrust violations he believed had been committed by a MoFo client.  *Id.* ¶ 28.  He alleges that this was

squarely within the scope of the legal services he had been retained to provide.  *Id.*  Plaintiff claims he brought this information to the attention of a MoFo partner and two associates, but that he did not receive any response and instead was summarily discharged within a week.  *Id.* ¶ 29.  Plaintiff claims he was discharged in retaliation for the legal advice he provided.  *Id.* ¶ 30.

Plaintiff alleges that Defendants could have informed him of his termination on the afternoon of December 11, 2019, but did not do so.  *Id.* ¶¶ 32, 44.  Consequently, when Plaintiff reported to work the next morning, he was confronted by security and escorted from the MoFo office space.  *Id.* ¶¶ 32-33, 44-45.

### *EEOC Charges and Causes of Action*

On or about February 9, 2020, Plaintiff filed charges of discrimination against MoFo and Mestel with the Equal Employment Opportunity Office ("EEOC"), but not with the D.C. Office of Human Rights or any other state or local fair employment practices agency.  *See* Exhibit 1 (EEOC Charges).  Plaintiff received right-to-sue letters from the EEOC on March 3 and March 6, 2020.[2]  *Id.* ¶ 7.

On May 29, 2020, Plaintiff filed a Complaint purporting to set forth three causes of action against both MoFo and Mestel.  First, Plaintiff claims that MoFo and Mestel discriminated against him because of his race, color, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(2) ("Title VII").  Compl. ¶¶ 47-51, 71-75.  Second, he claims that MoFo and Mestel discriminated against him because of his race in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").  Compl. ¶¶ 52-57, 76-81.  Third, he

---

[2] Although Plaintiff did not append copies of his EEOC charges to the Complaint, this Court may take judicial notice of these documents without converting this into a motion for summary judgment.  *Latson v. Holder*, 82 F. Supp. 3d 377, 383 (D.D.C. 2015) (district court may take judicial notice of an EEOC charge without converting a motion to dismiss into a motion for summary judgment).

contends that MoFo and Mestel failed to take reasonable steps to prevent harassment and discrimination under the Supreme Court's decision in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  Compl. ¶¶ 58-62, 82-86.[3]

Plaintiff asserts a fourth cause of action against MoFo alone, alleging it terminated his employment in violation of the public policy of the District of Columbia as set forth in the "common law and statutes of the District of Columbia and the United States," including but not limited to D.C. Code §§ 28-4502 and 28-4508.  *Id.* ¶¶ 63-70.  Specifically, he claims that MoFo retaliated against him making a good faith attempt to bring to light perceived antitrust violations on behalf of one of its clients.  *Id.* ¶ 67.

Pursuant to FRCP 12(b)(6), Defendants now move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

## LEGAL STANDARD

To survive a motion to dismiss under FRCP 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'"  *Beaulieu v. Barr*, No. 15-cv-896-TJK, 2019 WL 5579968, at *1 (D.D.C. Oct. 29, 2019) (quoting *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002))).

---

[3] *Faragher* involved a hostile work environment claim, which is one type of discrimination claim under Title VII, but it did not create a cause of action separate from Title VII.  *Faragher*, 524 U.S. at 786-87 (describing statutory basis for claim).  Accordingly, Defendants construe Plaintiff's claims under *Faragher* as claims for a hostile work environment under Title VII.

Although the plaintiff is entitled to the benefit of all reasonable inferences from the facts alleged," *id.* (citing *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)), the Court must not "assume the truth of legal conclusions" or "accept inferences that are unsupported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . do not suffice.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although district court generally apply a relaxed pleading standard complaints filed by *pro se* litigants, that rule does not apply where, as here, the plaintiff himself is an attorney. *Harrigan v. Carson*, No. 17-cv-930-TJK, 2019 WL 4737119, at *1 n.1 (D.D.C. Sept. 28, 2019) (citing *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009)).

## ARGUMENT

### I.     Plaintiff Fails to State a Claim for Discrimination Under Title VII or Section 1981.

Plaintiff claims he was subjected to discrimination on the basis of his race, color, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(2), which makes it an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." Compl. ¶¶ 1, 71.[4]  Plaintiff also asserts discrimination claims under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), which prohibits employers from discriminating on the basis of race with respect to the "benefits,

---

[4] The Complaint does not allege a violation of 42 U.S.C. § 2000e-2(a)(1), which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

privileges, terms and conditions" of employment.    42 U.S.C. § 1981.   Courts evaluate

discrimination claims under Title VII and Section 1981 using the same analytical framework.  *See*

*Ruifang Hu v. K4 Solutions, Inc.*, No. 18-cv-1240-TSC, 2020 WL 1189297, at *8 (D.D.C. Mar.

12, 2020) (citing *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir.

2020)); *Bynum v. Dist. of Columbia*, 424 F. Supp. 3d 122, 137 n.5 (D.D.C. 2020) (courts use the

same analytical framework to evaluate hostile work environment claims under Title VII and

Section 1981 (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 n.3 (D.C. Cir. 2000)).

Here, Plaintiff alleges he was subjected to unwelcome comments and unfair treatment by

various coworkers and supervisors over a period of slightly more than five months.  It is unclear

from the Complaint whether Plaintiff is only advancing a hostile work environment claim based

on the cumulative effect of all these alleged wrongs, or whether he is also seeking to establish

disparate treatment liability based on each incident independently.  Consequently, Defendants will

first evaluate whether any of these alleged incidents, individually, constitute actionable disparate

treatment on the basis of race, color, or sex.  Then Defendants will evaluate whether these alleged

incidents, cumulatively, support a claim for hostile work environment on the basis of race, color,

or sex.  For the reasons set forth below, the Complaint fails to state an actionable claim for

discrimination on either theory.

### A.    Plaintiff Fails to State a Claim for Disparate Treatment Based on Race, Color, or Sex.

To state a claim for disparate treatment discrimination under Title VII or Section 1981, a

plaintiff must allege sufficient facts to support a plausible inference (1) that he suffered an adverse

employment action, and (2) that the adverse action occurred because of his membership in a

protected class.  *See Ruifang Hu*,  2020 WL 1189297, at *8 (citing *Baloch v. Kempthorne*, 550

F.3d 1191, 1196 (D.C. Cir. 2008)).   For purposes of a discrimination claim, an adverse

employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 24-25 (D.D.C. 2005) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The action in question must inflict "objectively tangible harm." *Moore*, 401 F. Supp. 2d at 24 (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (recognizing that this requirement "guards against both judicial micromanagement of business practices, and frivolous suits over insignificant slights") (internal quotation omitted)). "Purely subjective injuries, such as dissatisfaction with a reassignment . . . or public humiliation or loss of reputation . . . are not adverse actions." *Forkkio v. Powell,* 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999); and *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002)). In addition to identifying an adverse employment action, a plaintiff "must also plead facts that connect [that action] to a discriminatory intent on the part of Defendants." *Beaulieu*, 2019 WL 5579968, at *4 (plaintiff must plead facts that plausibly suggest he was treated differently than similarly situated employees outside his protected classes (citing *Massaquoi v. Dist. of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015), and *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013))). Finally, a plaintiff cannot proceed with a cause of action based on acts for which there is no plausible basis to hold the defendant liable. As a rule, an employer may be vicariously liable for an employee's unlawful acts "only when the employer has empowered that employee to take tangible employment actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (quoting *Ellerth*, 524 U.S. at 761).

Based on these standards, the Complaint does not plausibly allege that Plaintiff experienced any material adverse employment action because of his race, color, or sex.

*Supervisor statement about prepaid wireless customers.*  Plaintiff alleges that on July 1, 2019, his first day of work, his supervisor made a statement to the effect that prepaid wireless customers are a "lower class" than postpaid customers.  Compl. ¶ 12-14.  Standing alone, this alleged statement does not constitute an actionable adverse employment action because it did not result in a significant change in his employment status or any other objectively tangible harm.  It was, at most, a vaguely insensitive comment that may have caused Plaintiff to experience some subjective injury.

Even if this statement were an adverse employment action, it would not be independently actionable under Title VII because it occurred more than 180 days before Plaintiff filed his EEOC charges against Defendants on February 9, 2020.  *See* 42 U.S.C. § 2000e-5(e)(1) (requiring that EEOC charges be filed within 180 days after the alleged unlawful employment practice occurred).  Although this period extends to 300 days when a complainant initially institutes proceedings with a state or local fair employment practices agency, Plaintiff did not do so here.  *See Moini v. LeBlanc*, No. 1:19-cv-03126-TNM, 2020 WL 1975786, at \*4 (D.D.C. Apr. 24, 2020) (employee must file EEOC charge within 180 days after occurrence of alleged unlawful conduct, unless he has initially instituted proceedings with a State or local agency) (citing 42 U.S.C. § 2000e-5(e)(1)).  Consequently, Plaintiff is barred from proceeding under Title VII based on discrete acts that occurred prior to August 13, 2019.

*Coworker statements in conference room.*  Plaintiff alleges that he was subjected to racially offensive comments when he was assigned to work in a conference room with three non-supervisory coworkers outside his protected class.  *Id.* ¶ 18.  He alleges that on one occasion, one

10

of these coworkers addressed or referred to him as "boy." *Id.* He alleges that on another occasion, these coworkers discussed how it had been "stupid" for white college students to post pictures of themselves on social media posing with rifles in front of Emmett Till's memorial, with the "tone and spirit" of their conversation suggesting that the students' only fault had been the failure to conceal their identities. *Id.*

Again, these alleged statements are not independently actionable because it did not result in a change of Plaintiff's employment status or cause any objectively tangible harm. Moreover, Plaintiff does not allege any facts indicating how Defendants may be held vicariously liable for these statements, since they were uttered by coworkers rather than by supervisors with any authority to take tangible employment actions against Plaintiff.

***Complaints by female coworker.*** Plaintiff alleges that he was subjected to "unsubstantiated complaints" and "frivolous lawsuits" brought against him by a non-supervisory female coworker. Compl. ¶¶ 22, 40. These allegations are not independently actionable for three reasons.

First, Plaintiff does not allege facts showing how his coworker's behavior had any materially adverse effect on his employment status or caused any objectively tangible harm. Plaintiff alleges that he was instructed to avoid his accuser and was separated from another female coworker with whom he had a good working relationship, which isolated and marginalized him and sent a "clear message" that the firm regarded him to be "some type of predator to women." Compl. ¶¶ 23-25. These measures, even if personally embarrassing to Plaintiff, do not constitute "adverse employment actions" for purposes of Title VII or Section 1981. *See Baird v. Gotbaum* ("*Baird I*"), 662 F.3d 1246, 1249 (D.C. Cir. 2011) (without accompanying effects on salary or other elements of employment status, allegation that supervisors "intentionally and perfidiously

created the appearance that the plaintiff and her staff were involved in violations of court orders and obstruction of justice" did not amount to adverse employment action for purposes of discrimination claim) (citing *Stewart*, 275 F.3d at 1135-36). *See also Moore*, 401 F. Supp. 2d at 26-27 (referral of disciplinary complaint for investigation, without more, is not a tangible employment action constituting a significant change in employment status); *Cancel de Rugg v. West*, 106 F. Supp. 2d 289, 297-98 (D.P.R. 2000) (investigation of charges of sexual harassment against employee was not an adverse employment action for purposes of Title VII).

Second, Plaintiff does not allege that his accuser was a supervisor, or otherwise explain how Defendants can be vicariously liable for her conduct under either Title VII or Section 1981. Plaintiff claims that Defendants "forced" him to endure his coworker's allegations and gave her the "authority" to harass him, but he alleges no facts to support these conclusory assertions. To the contrary, he alleges that Defendants separated him from his accuser, allowed him to work from home so that he could avoid her, and eventually terminated her employment for making false allegations against him. *Id.* ¶ 26.

Third, Plaintiff provides no factual allegations to support an inference that his coworker's conduct was motivated by his race, color, or sex. He claims to have "indirect and direct evidence" that his coworker's allegations were motivated by his race and gender (Compl. ¶ 22), but he did not include that information in his Complaint.

***Unequal treatment.*** Plaintiff alleges that he experienced several instances of unequal treatment during his employment. First, he alleges that he was not assigned to a work team until nearly three months after he started work, although it was "customary" for other team members to receive such assignments. Compl. ¶ 16. Second, he alleges that when he complained about racially insensitive comments by his coworkers, Mestel failed to give his complaints the same level of

scrutiny as claims that his Caucasian female coworker raised about him.  *Id.* ¶¶ 36-37.  Third, he alleges that he was not allowed to work remotely for as long as his Caucasian female accuser was permitted to do.  *Id.* ¶¶ 41-42.

None of these incidents constitute independently actionable adverse employment actions, because none of them had a material adverse impact on his pay or benefits or otherwise resulted in any objectively tangible harm.  Without objectively tangible harm, personnel decisions—even allegedly unfair ones—are not independently actionable.  *See Russell*, 257 F.3d at 818 (explaining that the "objectively tangible harm" requirement "guards against both judicial micromanagement of business practices, and frivolous suits over insignificant slights").  *See also Hutchinson v. Holder*, 668 F. Supp. 2d 201, 217-18 (D.D.C. 2009) (where supervisor required plaintiff to notify him of leave requests, meetings, and the like, but did not require the same of her coworkers, it "may have been an annoyance to plaintiff" but did "not rise to the level of objectively tangible harm"); *Ware v. Billington*, 344 F. Supp. 2d 63 (D.D.C. 2004) (employee did not suffer "adverse employment action" under Title VII despite revocation of parking privileges, assignment to undesirable office, and exclusion from employee directory, organizational chart, and management retreat, even if employee was humiliated by those actions); *Tyes-Williams*, 361 F. Supp. 3d at 8 (denial of the opportunity to telecommute is not an adverse employment action) (citing *Beckwith v. Ware*, 174 F. Supp. 3d 1, 5-6 (D.D.C. 2014)); *Hutchinson*, 668 F. Supp. 2d at 217-18 (despite alleging that employer eliminated plaintiff's supervisory and managerial responsibilities, assigned her menial work, informed her subordinates that she was no longer their supervisor; removing her from her office, denied her rewards and recognition, gave her a poor evaluation, harassed her regarding her sick leave, and referred her for an investigation were not adverse employment actions under Title VII and Section 1981).

13

*Threatened personnel action.*   Plaintiff alleges that on one occasion, Mestel's human resources manager threatened to terminate his employment in response to his request to work remotely.   Compl. ¶¶ 41-42.   It is well-established that the mere threat of an adverse action— particularly an isolated threat that does not come to pass—does not itself constitute an actionable adverse employment action for purposes of Title VII or Section 1981.   *See, e.g., Peters,* 873 F. Supp. 2d at 192-93 (mere threat of personnel action was insufficient to support claim for discrimination); *Ali v. Dist. of Columbia Gov't,* 810 F. Supp. 2d 78, 86-87 (D.D.C. 2011) (threatened adverse actions were not sufficient to support Title VII discrimination claim where the threat was not carried out); *Cochise v. Salazar,* 601 F. Supp. 2d 196, 201 (D.D.C. 2009) (letters of counseling or warning without attendant effects on employment are not "materially adverse").

*Termination.*   Although termination of employment is obviously an adverse employment action, Plaintiff does not allege that he was discharged *because* of his race, color, or sex.   Instead, he claims that MoFo terminated his employment in retaliation for reporting to his supervisors that a firm client had violated antitrust law, thereby jeopardizing a corporate transaction involving that client.   Compl. ¶ 29-31.   In fact, he alleges that "any other reason" given for the termination of his employment would be pretextual.   *Id.* ¶ 31.   Given these allegations, the Complaint cannot be construed to state a claim for wrongful discharge under Title VII or Section 1981 based on Plaintiff's membership in any protected group.

*Escorting from premises.*   Plaintiff complains that Defendants failed to inform him of his termination before he appeared for work on the morning of December 12, 2019, with the result that he was confronted by security and escorted from the firm's office space.   *Id.* ¶¶ 32-33, 44-45. Although Plaintiff alleges that this incident was embarrassing to him, it still does not constitute a material adverse employment action because it did not result in any objectively tangible harm.   *See*

14

*Brown v. Georgetown Univ. Hosp. Medstar Health,* 828 F. Supp. 2d 1, 8 (D.D.C. 2011) (forcibly

escorting African-American health care worker off hospital premises, although embarrassing, was

not an "adverse employment action" for purposes of Title VII disparate treatment claim).

For the foregoing reasons, Plaintiff's Complaint fails to state a claim for disparate treatment

discrimination under Title VII or Section 1981.

**B.      Plaintiff Fails to State a Claim for a Hostile Work Environment Based on Race, Color, or Sex.**

To state a hostile work environment claim under Title VII or Section 1981, a plaintiff must

allege sufficient facts to support a plausible inference that the "workplace is permeated with

discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *See Ruifang

Hu*,  2020 WL 1189297, at \*8 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)

(internal quotations and citations omitted)).  To determine whether a work environment is hostile,

courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 6-7

(D.D.C. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Baloch*, 550

F.3d at 1201).  "Not all abusive behavior, even when it is motivated by discriminatory animus, is

actionable." *Townsend v. U.S.*, 236 F. Supp. 3d 280, 311 (D.D.C. 2017) (quoting *Stewart*, 275

F.3d at 1133).  "[C]onduct must be *extreme* to amount to a change in the terms and conditions of

employment." *Harris v. Wackenhut Services, Inc.*, 590 F. Supp. 2d 54, 74 (D.D.C. 2008)

(emphasis added) (quoting *Faragher*, 524 U.S. at 788).  "'[T]he ordinary tribulations of the

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional

teasing' are not sufficiently serious to create a hostile work environment." *Tyes-Williams v.*

15

*Whitaker*, 361 F. Supp. 3d 1, 6-7 (D.D.C. 2019) (quoting *Faragher*, 524 U.S. at 788 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)). "[O]ffhand comments and isolated incidents (unless extremely serious)" do not meet this standard. *Harris*, 590 F. Supp. 2d at 74 (citing *Faragher*, 524 U.S. 775). "These standards are sufficiently demanding to ensure that Title VII does not become a general civility code." *Harris*, 590 F. Supp. 2d at 74 (citing *Faragher*, 524 U.S. 778).

### 1.    The Alleged Wrongs in the Complaint are not Sufficiently Linked to Form a Coherent Hostile Work Environment Claim.

The allegations in Plaintiff's complaint, even in the aggregate, do not come close to supporting a hostile work environment claim based on race, color, or sex. As a threshold matter, the "constituent acts [of a hostile work environment claim] must be 'adequately linked' such that they form 'a coherent hostile environment claim.'" *Baird v. Gotbaum* ("*Baird II*"), 792 F.3d 166, 168-69 (D.C. Cir. 2015) (quoting *Baird I*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)). "For example, they might 'involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers.'" *Id.* at 169 (quoting *Baird I*, 662 F.3d at 1251). Here, by contrast, Plaintiff's hostile work environment claim is based on a patchwork of isolated, unconnected, and non-recurring perceived slights and minor injustices attributable to unrelated coworkers and supervisors. He alleges that (i) his direct supervisor made a comment on his first day of work about prepaid wireless customers being "low class," which he subjectively perceived to be racially discriminatory despite the absence of any express mention of race; (ii) one non-supervisory coworker referred to him as "boy" on one occasion; (iii) on another occasion, this non-supervisory coworker had a conversation with two other non-supervisory coworkers about college students posing in front of Emmett Till's memorial, the "tone and spirit" of which Plaintiff perceived to be racially offensive; (iv) a female non-supervisory coworker made false allegations

and filed a frivolous lawsuit against him; and (v) Mestel's human resources manager failed to take his complaints as seriously as those of his female accuser, made him out to be a "predator to woman" by separating him from his accuser and another female coworker, threatened him with termination of employment after he asked to work remotely for as long a time period as his female accuser, and failed to notify him of his termination of employment in sufficient time that he could avoid being escorted out of the law firm workspace by security.  Plainly, these incidents are not sufficiently linked to form a coherent hostile work environment claim.

> ### 2. Plaintiff's Hostile Work Environment Claim Includes Alleged Wrongs That Cannot Be Legally Imputed to Defendants.

Plaintiff attributes much of the conduct in the Complaint—namely, the use of the term "boy," the conversation about the Emmett Till memorial, and the "unsubstantiated complaints and frivolous lawsuits" by a female colleague—to coworkers whose conduct cannot be directly imputed to Defendants.  *Vance*, 570 U.S. at 424 (employer can only be liable for coworker harassment if it was negligent in controlling working conditions).  Although Plaintiff asserts in a conclusory fashion that Defendants failed to prevent these alleged harms, he provides no factual allegations to support such an inference.  Plaintiff alleges that his supervisor *could* have overheard the comments in the conference room by virtue of his office location, but he does not allege that the supervisor *actually* heard them or even that he *should* have heard them.  Plaintiff alleges that when he himself complained about those statements, he was moved to a new work location and did not experience any further unwelcome conduct from these individuals.  Plaintiff also claims that Defendants "forced" him to defend himself against "unsubstantiated complaints" and a "frivolous lawsuit" brought against him by a female non-supervisory coworker, but he presents no factual allegations to suggest how Defendants can be liable for her conduct.  To the contrary, he alleges that Defendants separated him from his accuser, allowed him to work from home in order

to avoid crossing paths with her, and eventually fired her for making false allegations against him. Far from showing that Defendants were negligent in protecting Plaintiff from any alleged coworker harassment, Plaintiff's own allegations indicate that Defendants acted promptly and decisively to protect him to the extent of their authority.

### 3. Plaintiff's Hostile Work Environment Claim Includes Alleged Wrongs That Have no Connection to Plaintiff's Race, Color, or Sex.

To survive a motion to dismiss, Plaintiff must allege facts to support a plausible inference "that the hostile work environment was the result of discrimination based on a protected status." *Ruifang Hu*, 2020 WL 1189297, at *8 (quoting *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004)). The Court must "exclude from consideration" any personnel decisions "that lack a linkage of correlation to the claimed ground of discrimination." *Childs-Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 77-78 (D.D.C. 2005), *aff'd*, 187 F. App'x 1 (D.C. Cir. 2006). Here, Plaintiff fails to connect all of the grievances alleged in his Complaint to race, color, or gender. For example, Plaintiff speculates that his supervisor's comment about "low class" prepaid wireless customers was an intentional racial insult, but comments that are "merely tinged with offensive . . . connotations" are not actionable unless they "actually constitute[] discrimination" based on protected status. *Peters*, 873 F. Supp. 2d 158 (D.D.C. 2012) (quoting *Oncale*, 523 U.S. at 81)). Likewise, although Plaintiff claims to possess "indirect and direct evidence" that his female coworker's allegations against him were motivated by race and gender, he elected not to include that information in his Complaint. Plaintiff complains about how Defendants handled his complaints, the allegations raised by his female coworker, his request to work remotely, and the notification of his termination of employment, but he offers no factual allegations to support a plausible inference that these alleged wrongs were based on his

18

race, color, or sex.  Without such a connection, these allegations cannot support Plaintiff's claim for a hostile work environment based on his race, color, or sex.

>    **4.    The Alleged Conduct in the Complaint is not Sufficiently Severe or Pervasive to Support a Hostile Work Environment Claim.**

In the aggregate, the allegations in Plaintiff's Complaint simply do not come close to the level of "severe or pervasive" conduct necessary to support a hostile work environment claim.  The statements about which Plaintiff complains, even if construed to be race-based and legally attributable to Defendants, do not rise to the level of objectively offensive conduct that is sufficiently severe or pervasive to alter the Plaintiff's working conditions.  *See Goode v. Billington*, 932 F. Supp. 2d 75, 89 (D.D.C. 2013) ("casual or isolated manifestations of a discriminatory environment, such as a few ethnic or racial slurs, may not raise a cause of action") (quoting *Park v. Howard Univ.*, 71 F.3d 904, 906 (D.C. Cir. 1995)); *Childs-Pierce,* 383 F. Supp. 2d at 77 (sporadic use of abusive language falls outside the scope of Title VII protection).

Nor can Plaintiff state a hostile work environment claim based on occasional minor personnel decisions that he perceived to be unfair, such as his delayed assignment to a work team, the length of time he was permitted to work remotely, his separation from female coworkers following the allegations brought against him, or the alleged mishandling of his termination.  *See Ruifang Hu*, 2020 WL 1189297, at *9 ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment." (quoting *Bell v. Gonzales*, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) (citations omitted))); *Childs-Pierce,* 383 F. Supp. 2d at 77 (ordinary workplace tribulations fall outside the scope of Title VII protection).

Courts in this Circuit have found hostile work environment claims to be deficient based on allegations and evidence far more serious than what has been alleged by Plaintiff.  *See, e.g., Daniel*

*v. Johns Hopkins Univ.*, 118 F. Supp. 3d 312, 319-320 (D.D.C. 2015) (allegation by African-American employee that manager called him "boy" and "hit him on at least a dozen occasions" was not sufficiently "severe or pervasive" to support a hostile work environment claim); *Badibanga v. Howard Univ. Hosp.,* 679 F.Supp.2d 99, 104 (D.D.C. 2010) (dismissing a hostile work environment claim where the plaintiff was placed on leave because of a false accusation, colleagues criticized his accent, he was told that he could easily be replaced with an American, and his supervisor told him that they would not hire other Africans); *George v. Leavitt,* 407 F.3d 405, 408 (D.C. Cir. 2005) (where African-American female was "told by three separate employees to 'go back to Trinidad' or to 'go back to where [she] came from,'" and where her "co-workers shouted at her, told her that she should never have been hired, and told her to 'shut up'" was insufficient to support hostile work environment claim); *Harris*, 590 F. Supp. 2d 54, 69, 73-77 (employer was entitled to summary judgment on race-based hostile work environment claim under the D.C. Human Rights Act, under same standard as Title VII, despite evidence that the employee was subjected to multiple offensive race-based remarks and was assigned to an office in poor condition, and that his white counterparts were given better vehicles, greater authority to make small purchases, and larger holiday budgets).

Regardless of how Plaintiff *subjectively* experienced the alleged wrongs in the Complaint, he cannot state a claim for hostile work environment claim unless he identifies conduct that is "severe or pervasive enough to create an *objective* hostile or abusive work environment." *Townsend*, 236 F. Supp. 3d at 311 (quoting *Harris*, 510 U.S. at 21-22); *Baird II*, 792 F.3d 166, 172 (D.C. Cir. 2015) (standard for evaluating hostile work environment claims is an objective one, and conduct does not become actionable merely because it takes "a serious toll on [a plaintiff's] emotional and physical health); *Ruifang Hu*, 2020 WL 1189297, at *8 (a work environment is

objectively hostile or abusive if a "reasonable person" would find it to be so). (quoting *Harris*, 510 U.S. at 21).  In the final analysis, "a long list of trivial incidents is no more a hostile working environment than a pile of feathers is a crushing weight."  *Baird II*, 792 F.3d at 172.

For the foregoing reasons, Plaintiff's Complaint fails to state a hostile work environment claim under Title VII or Section 1981.

## II.    The Complaint Fails to State a Claim for Wrongful Discharge in Violation of Public Policy in the District of Columbia.

Plaintiff asserts a D.C. claim for wrongful discharge in violation of public policy against MoFo, claiming that the firm terminated his employment as a contract antitrust attorney because he informed them of his belief that one of its clients had violated antitrust law.  The tort of wrongful discharge in violation of public policy ("VPP") in the District of Columbia is a limited exception to the general rule that an at-will employee may be discharged "at any time and for any reason, or for no reason at all."  *See Clay v. Howard Univ.,* 128 F. Supp. 3d 22, 27 (D.D.C. 2015).  To state a claim for wrongful discharge in violation of public policy, a plaintiff must point to "some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution," and there must be a "close fit" between the policy "and the conduct at issue in the allegedly wrongful termination."  *See id.* (citing *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997)).  The "common denominator" in a viable wrongful discharge claim is "the existence of *specific* laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained, whether or not the employer actually violated the law or regulation."  *Id.* at 29 (citing *Leyden v. Am. Accreditation Healthcare Comm'n*, 83 F. Supp. 3d 241, 248 (D.D.C. 2015) (emphasis added)).  In view of these requirements, the public policy exception has often been described as "narrow."  S*ee Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 54 (D.D.C. 2018).

In the limited number of cases in which courts in the District of Columbia have recognized a public policy exception to the at-will employment doctrine, the plaintiffs relied on statutes that imposed an affirmative obligation on *them* to perform or refrain from performing a specific act. In *Washington v. Guest Services*, 718 A.2d 1071 (D.C. 1998), a cook at a retirement home claimed that she had been terminated for reporting a co-worker who sprayed cleaning solvents in a food preparation area, and the court allowed her to assert a VPP claim based on District of Columbia regulations that prohibited the service of contaminated food.[5]  Similarly, in *Liberatore v. Melville Corp.*, 168 F.3d 1326 (D.C. Cir. 1999), the plaintiff was a pharmacy manager who claimed to have been terminated for threatening to report inadequate drug storage conditions to the FDA, and the court allowed the VPP claim to proceed based on federal and District of Columbia laws requiring the proper storage of drugs.[6]  In *Fingerhut v. Children's National Medical Center*, 738 A.2d 799 (D.C. 1999), a police officer claimed he had been terminated for reporting a government official's bribe to his supervisor and to the FBI, and the court allowed his VPP claim based on District of Columbia statues and regulations that expressly required police officers to report such unlawful

---

[5] The plaintiff in *Guest Services* relied on the now-repealed regulations and statute: 23 D.C. Mun. Regs. § 2101.1 (1990) ("No person shall dispense . . . prepare, [or] process . . . food unless it is appropriately protected from deleterious aerosol . . ."); *id.* § 2200.2 ("No person shall work or be allowed to work in any capacity . . . [w]hen the person does not use hygienic work practices."); *id.* § 3010.1 ("All food and drink shall be wholesome [and] unadulterated . . ."); and D.C. Code § 22-3416 (1996) ("No person shall sell, or cause to be sold, or offer for sale any food which is unwholesome or unfit for use.").

[6] The plaintiff in *Liberatore* cited to federal and District of Columbia statutes and regulations that prohibited the adulteration of drugs, including: 21 C.F.R. § 211.142(b) (requiring the storage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, and quality of the drug products are not affected); 21 U.S.C. § 351 and 21 C.F.R. § 210.1(b) (failure to comply with storage requirements results in adulterated drugs); 21 U.S.C. § 333(a)(1) (imposing a fine, imprisonment, or both on persons who adulterate drugs); D.C. Code § 2-2013(a) (requiring that drugs which may deteriorate "shall at all times be stored under conditions specified on the label of the original container and in accordance with applicable District of Columbia or federal laws or regulations").

conduct.[7]   In *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 4 (D.D.C. 2002), a former

Congressman and CEO alleged that he had been terminated for refusing to participate in political

activities that he believed violated the Internal Revenue Code, and the court allowed his VPP claim

to proceed based on a provision of the tax code (IRC § 501(c)(3)) that prohibits non-profit

organizations from participating in political campaigns.  *See also Vreven v. AARP*, 604 F. Supp.

2d 9 (D.D.C. 2009) (allowing VPP claim where vice president alleged that he had been fired for

complaining about his own organization's violation of IRC § 501(c)(4), which prohibits tax

evasion by civic leagues or organizations); *Myers v. Alutiiq Int'l Sols., LLC*, 811 F. Supp. 2d 261

(D.D.C. 2011) (allowing VPP claim where project manager alleged that he was discharged for

reporting his own employer's violation of a federal regulations that prohibit conflicts of interest in

government contracts).

Plaintiff stakes his public policy claim on the D.C. Antitrust Act, D.C. Code § 28-4501 *et*

*seq.*, and possibly on the Sherman Antitrust of Act of 1890, as amended, 15 U.S.C. §§ 1-38.[8]

Specifically, he cites D.C. Code § 28-4502, which broadly prohibits "[e]very contract,

combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all

or any part of which is within the District of Columbia."  D.C. Code § 28-4502; *accord* 15 U.S.C.

§ 1 (prohibiting "every contract, combination in the form of trust or otherwise, or conspiracy, in

restraint of trade or commerce among the several States, or with foreign nations).  Plaintiff also

---

[7] The plaintiff in *Fingerhut* relied on D.C. Code § 22-704 (recognizing bribery as illegal); D.C. Code § 4-142 (requiring D.C. law enforcement agents to take action to enforce the law, including making arrests); D.C. Code § 4-175 (requiring police officers to report information pertaining to suspected illegal activity).

[8] Plaintiff alleges for jurisdictional purposes that his Complaint is based in part on federal antitrust law, but it is unclear whether he relies on any specific provision of that law to support his public policy claim.  *See* Compl. ¶ 5.

cites D.C. Code § 28-4508, which creates a private cause of action for "any person who is injured in that person's business or property by reason of anything forbidden" by the D.C. Antitrust Act.[9]

Unlike the claimants in the cases reviewed above, however, Plaintiff has not cited any statutory provisions that regulate the *specific* conduct for which he claims to have been discharged—namely, reporting antitrust legal advice to a client).  Plaintiff was not subject to any obligations under any federal or District of Columbia antitrust law, and he himself was in no position to violate those laws (whether by commission or omission).  Plaintiff clearly was not acting as a "whistleblower" in furtherance of any public interest when he provided the legal advice for which he claims to have been terminated; he was simply executing the professional legal service for which he had been retained.  Accordingly, Plaintiff has not demonstrated the requisite "close fit" between a specific statute or regulation and the activity that resulted in his termination.

This conclusion is reinforced by the open-ended language of the statutes upon which Plaintiff relies. Courts will not recognize public policy claims in D.C. based on statutes that are "too amorphous to serve as a public policy exception," *Perkins v. WCS Constr., LLC*, No. 18-cv-751-RC, 2020 WL 3128950, at *4 (D.D.C. June 12, 2020), and few statutes are as "amorphous" or open-ended as the broad prohibition against contracts, combinations, or conspiracies in "restraint of trade or commerce."  *See* D.C. Code § 28-4502; 15 U.S.C. § 1.  Obviously, this language has been imbued with rich significance through decades of jurisprudence and economic

---

[9] Defendants are not aware of any cases in which § 28-4508 has been construed to create a cause of action for employees who are discharged for complaining of antitrust violations. Were § 28-4508 to be construed in this manner, however, the existence of such a statutory remedy would require dismissal of Plaintiff's VPP tort claim. *See LeFande v. Dist. of Columbia*, 864 F. Supp. 2d 44, 50 (D.D.C. 2012) (quoting *Carter v. Dist. of Columbia*, 980 A.2d 1217, 1225-26 (D.C. 2009) ("even where there is a showing of a clearly identifiable policy, the D.C. Court of Appeals has refused to find new exceptions to the doctrine of at-will employment where the legislature has already 'creat[ed] a specific, statutory cause of action to enforce' the public policy at issue")).

development, but its purposes have never included the creation of special job security for antitrust lawyers.

If Plaintiff's claim is recognized, it will mark a significant and unwarranted expansion of the heretofore "narrow" public policy exception to at-will employment in the District of Columbia. It would, in effect, create a new cause of action for any attorney claiming to have been discharged from employment because of advice related to the interpretation or application of any law that embodies an "identifiable public policy"—the essential work of virtually all lawyers.  Such an unprecedented expansion of D.C. tort law is unwarranted, unwise, and should not be permitted.

For these reasons, Defendants request that the Court dismiss Plaintiff's claim for wrongful discharge in violation of public policy for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss, dismiss Plaintiffs' claims for failure to state a claim, and grant such other relief as may be proper and just.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
Jose E. Galvan (D.C. Bar. 1024903)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com
jose.galvan@ogletree.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this August 6, 2020, I caused the foregoing to be filed via the Court's CM/ECF system, with a copy to be served by regular mail and electronic mail upon *pro se* Plaintiff as follows:

Junius J. Joyner, III
2220 Henry Watts Loop
Woodbridge, VA 22191
juniusjoyner@yahoo.com

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com

*Counsel for Defendants*

43791188.1

26