## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Junius J. Joyner, III, | |
| *Plaintiffs,* | Case No. 1:20-cv-1440-TJK |
| v. | **FILED UNDER SEAL** |
| Morrison & Foerster LLP *et al.*, | **PROPOSED REDACTIONS HIGHLIGHTED** |
| *Defendants.* | |

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants Morrison & Foerster LLP, Mestel & Company New York LLC, Evan Harris, Natalie Fleming Nolen, and Patti Ayala, by and through the undersigned counsel, respectfully submit this reply in support of their motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted.

Dated:  April 12, 2021

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
Jose E. Galvan (D.C. Bar. 1024903)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com
jose.galvan@ogletree.com

***Counsel for Defendants***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 1

I.  Plaintiff's Section 1981 Disparate Treatment Claims Against Morrison and
    Mestel Fail. .............................................................................................................. 1

    A.  Plaintiff's "Workstream" Claim Against Morrison Fails. ........................... 1

    B.  Plaintiff's "Remote Work" Claim Against Mestel Fails. ............................ 6

II.  Plaintiff's Section 1981 or Title VII Hostile Work Environment Claims
     Against Morrison and Mestel Fail. .......................................................................... 9

III.  Plaintiff's Section 1981 Claims Against the Individual Defendants Fail. .......... 13

     A.  Plaintiff Fails to Allege Any Plausible Basis to Pursue His Section
         1981 Disparate Treatment Claims Against Ms. Fleming Nolen and
         Mr. Harris. ................................................................................................. 13

     B.  Plaintiff Fails to Allege Any Plausible Basis to Pursue His Section
         1981 Disparate-Treatment Claim Against Patti Ayala. ........................... 16

     C.  Plaintiff Fails To Address, and Thus Concedes, the Individual
         Defendants' Dismissal Arguments As To His Hostile-Work
         Environment Claim. ................................................................................... 16

IV.  Plaintiff's Claim for Wrongful Discharge in Violation of Public Policy
     Fails. ...................................................................................................................... 17

     CONCLUSION ........................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................17

*Baird v. Gotbaum,*
    792 F.3d 166 (D.C. Cir. 2015) ...........................................................................11

*Barrett v. Pa. Steel Co.,*
    2014 WL 3572888 (E.D. Pa. July 21, 2014).......................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................7, 17, 20

*Bereston v. UHS of Del., Inc.,*
    180 A.3d 95 (D.C. 2018) .............................................................................19, 20

*Brookens v. Solis,*
    616 F. Supp. 2d 81 (D.D.C. 2009) ...................................................................4, 5

*Burley v. Nat'l Passenger Rail Corp.,*
    801 F.3d 290 (D.C. Cir. 2015) ........................................................................6, 10

*Edwards v. EPA,*
    456 F. Supp. 2d 72 (D.D.C. 2006) ...................................................................4, 9

*Amore ex rel. Estates of Amore v. Accor,*
    529 F. Supp. 2d 85 (D.D.C. 2008) .......................................................................5

*Francis v. Giacomelli,*
    588 F.3d 186 (4th Cir. 2009) .............................................................................17

*Harrigan v. Carson,*
    2019 WL 4737119 (D.D.C. Sep. 28, 2019) .........................................................3

*Hornsby v. Watt,*
    217 F. Supp. 3d 58 (D.D.C. 2016) ...................................................................4, 9

*Hunter v. District of Columbia,*
    797 F. Supp. 2d 86 (D.D.C. 2011) .....................................................................13

*Jones v. Castro,*
    168 F. Supp. 3d 169 (D.D.C. 2016) .....................................................................4

*Jones v. Horne*,
    634 F.3d 588 (D.C. Cir. 2011) ................................................................................17

*Kirton v. Mayorkas*,
    2021 WL 981241 (D.D.C. Mar. 16, 2021) ................................................................8

*Kreuzer v. Am. Acad. of Periodontology*,
    735 F.2d 1479 (D.C. Cir. 1984) ..............................................................................20

*Moore v. Ashcroft*,
    401 F. Supp. 2d 1 (D.D.C. 2005) .............................................................................10

*Nurriddin v. Bolden*,
    818 F.3d 751 (D.C. Cir. 2016) ................................................................................15

*Parker v. Dugger*,
    498 U.S. 308 (U.S. 1991) ........................................................................................19

*Patzy v. Hochberg*,
    217 F. Supp. 3d 357 (D.D.C. 2016) ..........................................................................4

*Serrano v. I. Hardware Distrib., Inc.*,
    2015 WL 4528170 (S.D.N.Y. Jul. 27, 2015) ..........................................................16

*Stephenson v. Cox*,
    223 F. Supp. 2d 119 (D.D.C. 2002) .....................................................................7, 13

*Thomas v. Securiguard Inc.*,
    412 F. Supp. 3d 62 (D.D.C. 2019) ...........................................................................11

*U.S. v. Flakeboard Am. Ltd.*,
    No. 3:14-cv-4949 (N.D. Cal.) ..................................................................................21

*In re Uchendu*,
    812 A.2d 933 (D.C. 2002) ........................................................................................22

*United States v. Citizens & S. Nat'l Bank*,
    422 U.S. 86 (1975) ...................................................................................................20

*Vance v. Ball State Univ.*,
    570 U.S. 421 (2013) ............................................................................................14, 18

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*,
    715 A.2d 873 (D.C. 1998) ........................................................................................22

*Weng v. Solis*,
    960 F. Supp. 2d 239 (D.D.C. 2013) .......................................................................8, 9

*White v. Vilsack*,
   888 F. Supp. 2d 93 (D.D.C. 2012) ................................................................5

*Wood v. Moss*,
   572 U.S. 744 (2014).........................................................................................15

## Other Authorities

D.C. Rules of Professional Conduct Rule 8.4(a)-(d) ...................................................22

D.C. Rules of Professional Conduct Rule 8.4(c) ........................................................22

## INTRODUCTION

It is now abundantly clear that Plaintiff's Third Amended Complaint does not pass muster. Throughout his opposition brief, Plaintiff misstates and misapplies controlling legal authorities, attempts to substitute conclusory assertions as surrogates for well-pleaded factual allegations, and turns a blind eye to multiple failings identified by Defendants. Despite having now revised and expanded his pleading three times, including in response to two prior motions to dismiss, Plaintiff still falls considerably short of raising plausible claims for discrimination, hostile work environment, or wrongful discharge against any Defendant in this matter.

Accordingly, for the reasons set forth below and in Defendants' opening brief, Plaintiff's Third Amended Complaint fails to state any legally sufficient claims for relief and should be dismissed in its entirety and against all Defendants.[1]

## ARGUMENT

I. **Plaintiff's Section 1981 Disparate Treatment Claims Against Morrison and Mestel Fail.**

A. **Plaintiff's "Workstream" Claim Against Morrison Fails.**

Plaintiff concedes that his Section 1981 disparate treatment claim against Morrison is based solely on the allegation that he was not assigned to a "workstream" as quickly as Caucasian employees. This claim must be dismissed for two independent reasons.

First, Plaintiff fails to demonstrate how the alleged timing of his workstream assignment is an actionable adverse employment action. Acknowledging that "undesirable work assignments" are not themselves adverse actions, Plaintiff attempts to connect his workstream assignment to

---

[1] Plaintiff is an attorney and has not asked the Court to review his complaint under a relaxed pleading standard. *See Harrigan v. Carson*, No. 17-cv-930-TJK, 2019 WL 4737119, at *1 n.1 (D.D.C. Sep. 28, 2019) (finding no "relaxed" pleading standard applies to *pro se* complaint where "the plaintiff is an attorney") (citing *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009)).

compensation by claiming that "[n]ot being able to take phone calls as early or as late as attorneys assigned to workstreams dramatically reduced the number of hours that Plaintiff could work and therefore reduced his ability to earn compensation." Third Am. Compl. (ECF No. 31, filed under seal) (hereinafter "TAC") ¶ 23. But Plaintiff's allegation that he *could* have earned more money in a workstream is not the same as an allegation that he *would* have earned more money. This Court has repeatedly declined to equate the *opportunity* for compensation with *actual* compensation for purposes of identifying an adverse employment action. *See, e.g., Patzy v. Hochberg*, 217 F. Supp. 3d 357, 361–62 (D.D.C. 2016) (low performance rating was not an adverse employment action where it deprived plaintiff of *eligibility* to receive a bonus, absent factual allegations indicating that plaintiff actually would have received a bonus if eligible); *Jones v. Castro*, 168 F. Supp. 3d 169, 182 (D.D.C. 2016) (placement on administrative leave not an adverse employment action where it only deprived plaintiff of ability to *qualify* for bonuses).

To make a plausible claim that the delay in his assignment to a workstream was a materially adverse action, Plaintiff must provide a "discernible" and "non-speculative" factual basis for concluding that it caused him some "objectively tangible harm." *See Hornsby v. Watt*, 217 F. Supp. 3d 58, 64 (D.D.C. 2016) ("In order for an employment action to be materially adverse, it must cause 'objectively tangible harm' that is not 'unduly speculative.'") (quoting *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (internal citation and quotation marks omitted)); *see also Edwards v. EPA*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) (an adverse employment action "must have a discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment"). Two cases illustrate the difference. On the one hand, in *Brookens v. Solis*, 616 F. Supp. 2d 81, 91-92 (D.D.C. 2009), the plaintiff alleged that the denial of a temporary job assignment was an adverse employment action because it deprived him of "training, experience

and promotional or advancement opportunities." The district court dismissed the claim on the grounds that the plaintiff failed to allege the deprivation of anything more than a speculative *potential* benefit. *Id.* On the other hand, in *White v. Vilsack*, 888 F. Supp. 2d 93, 98-99 (D.D.C. 2012), the district court concluded that the denial of a temporary assignment was an adverse employment action because the plaintiff offered well-pleaded factual allegations to show that the assignment would have yielded higher pay—specifically, that she had previously worked on a similar assignment and earned more compensation.

Here, Plaintiff fails to allege that he was deprived of an actual, rather than merely a potential, future benefit. He does not allege, for instance, that attorneys assigned to workstreams *actually* worked and earned more than attorneys who were not. Nor does he allege that his own hours or compensation actually increased—let alone materially—after he was allegedly belatedly assigned to a workstream. At most, Plaintiff alleges that the delay in his assignment to a workstream *could have* deprived him of a *potential* opportunity for some *unquantified* benefit, and this does not constitute a plausible adverse employment action under governing precedent. Further, Plaintiff does not even attempt to reconcile his conjectural theory of lost compensation due to an allegedly delayed workstream with his prior allegation that he made an affirmative choice to "alter his work schedule" and "work[] less hours." TAC ¶ 21. *See* Defs.' Mot. to Dismiss, p. 11 n.2. This provides a further basis to dismiss his "workstream" claim as implausible, as self-contradictory factual allegations in a complaint are not accepted as true and are insufficient to show that a pleader is entitled to relief. *See Amore ex rel. Estates of Amore v. Accor*, 529 F. Supp. 2d 85, 94-95 (D.D.C. 2008) (citing *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)).

<u>Second</u>, even if Plaintiff could show that the timing of his assignment to a workstream was an adverse employment action, he still has failed to allege sufficient facts supporting a plausible

inference that race was the "but-for" cause of that delay.  Plaintiff seeks to raise an inference of discrimination by alleging that "two new [Caucasian] attorneys (Co-Worker 1 and 2) were added to the project and both were immediately assigned to workstreams whereas Plaintiff had to wait more than two-and-a-half months before being assigned to a team."  Opp'n to Mot. to Dismiss (ECF No. 39, filed under seal) (hereinafter "Opp'n"), p. 10-11.  He alleges "on information and belief" that the Caucasian attorney hired before him "was also immediately assigned to a workstream" and that "all attorneys that were non-protected class members hired through Hire Counsel were immediately assigned to workstreams."  *Id.*, p. 11 (citing TAC, p. 6 n.2).

To state a plausible race discrimination claim exclusively through comparator evidence, as Plaintiff seeks to do here, he must present sufficient factual allegations to raise an inference that he was treated less favorably than *similarly situated* Caucasian employees.  Plaintiff does not advance any factual allegations to show that these generalized, unnamed comparators were similarly situated to him—*i.e.*, "that the relevant aspects of his employment situation were nearly identical to those of the other employee[s]."  *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)).

Plaintiff argues that he need not "articulate in detail how non-protected class members were similarly-situated" because plaintiffs are not required to establish the elements of a *prima facie* case of discrimination in their pleadings.  Opp'n, p. 11.  This misstates the issue, as Defendants have never suggested that Plaintiff must precisely establish each and every element a *prima facie* case of discrimination to state a claim at the pleadings stage.  Instead, the issue is whether Plaintiff has presented *sufficient* factual allegations—through comparator allegations or otherwise—to support a *plausible inference* that he would have been assigned to a workstream earlier *but for his race*.  Plaintiff's allegation that he was treated differently than Caucasian employees does not give

rise to a plausible inference of discrimination without factual context indicating how those employees were similarly situated to him in all relevant respects.  Plaintiff cannot rely on the Court to fill in the gaps in his Complaint with speculation—speculation about who made decisions to assign attorneys to workstreams, whether the workstreams required attorneys with special qualifications or backgrounds, whether his skills were better suited to other work outside a workstream, or whether he or other attorneys asked to be assigned to a workstream.  Accordingly, Plaintiff fails to identify sufficient non-conclusory allegations, beyond mere speculation, to indicate that he would have been assigned to a workstream earlier "but for" his race.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that the non-conclusory allegations in a complaint, accepted as true, must demonstrate a "right to relief above the speculative level").

Moreover, Plaintiff wholly ignores the fact that he previously pleaded a non-race-related reason that he believes he was not assigned to a workstream—*i.e.*, "to prevent the discovery of potential antitrust violations."  *See* Defs. Mot. to Dismiss, p. 12 n.3 (quoting Second Am. Compl. (ECF 12) ¶ 37).  Setting aside that Plaintiff's allegations of "potential antitrust violations" have no merit and are not otherwise legally cognizable, *see* § IV, *infra*, the fact that Plaintiff himself alleged some other reason could have been behind his workstream assignments precludes any plausible claim that the actual, "but for" cause for that alleged circumstance was his race.  And because Plaintiff failed to respond to this argument, the Court can and should treat it as conceded.  *See Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion . . . but fails to address certain arguments made by the [other party], the court may treat those arguments as conceded.").[2]

---

[2]  On March 5, 2021, following Defendants' motion to dismiss Plaintiff's Third Amended Complaint, the Court entered a *Fox/Neal* order warning Plaintiff that "the Court may treat as conceded any unopposed arguments Defendants advance in support of their Motion."  ECF No.

For these reasons, Plaintiff's race-based disparate treatment claim against Morrison under Section 1981 necessarily fails.

### B.    Plaintiff's "Remote Work" Claim Against Mestel Fails.

Plaintiff concedes that his Section 1981 disparate treatment claim against Mestel is based entirely on the alleged denial of his request to work remotely for a period of "approximately three days" before his trial with "Co-Worker 1."  TAC, p. 14 ¶ 57.  This claim fails because Plaintiff has not presented any plausible basis for concluding that the response to his request was an adverse employment action, or that his race was the but-for cause of this decision.

<u>First</u>, Plaintiff expressly concedes that "[c]ourts in this and other jurisdictions have repeatedly held that denial of a request to telework on its own does not constitute an adverse employment action."  Opp'n, pp. 8-9 (quoting *Brown v. Jewell*, 134 F. Supp. 3d 170, 181 (D.D.C. 2015)).[3]  Nonetheless, he cites *Weng v. Solis*, 960 F. Supp. 2d 239, 249 (D.D.C. 2013), as support for his argument that "some denials to work remotely are adverse events."  Opp'n, p. 9.  In *Weng*, the district court concluded (with no analysis) that there was a genuine issue of fact about whether the plaintiff's complete removal from a program that had allowed her to work from home one day per week was adverse employment action.  *Weng*, 960 F. Supp. 2d at 249.  Plaintiff argues that his case is analogous to *Weng* because he "had previously been allowed to work from home," and thus

---

33, p. 2 (citing *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004)).

[3] Judge Lamberth recently contributed another opinion to this growing body of precedent.  In *Kirton v. Mayorkas*, No. 1:18-cv-1580-RCL, 2021 WL 981241 (D.D.C. Mar. 16, 2021), he held that "[c]ourts in this Circuit and other jurisdictions have consistently held that denial of a request to telework does not, on its own, amount to an adverse employment action, as it does not involve a significant change in employment status."  *Id.* at *6 (collecting cases).  His well-reasoned opinion explains that this conclusion is unaffected by the increasing popularity of telework arrangements.  *Id.*

the one-time denial of his telework request was "similar to being removed from a program MOFO had created."  Opp'n, p. 10 n.5.  However inventive, this argument finds no basis in the Complaint. Plaintiff does not allege that Morrison had a policy permitting contract attorneys like Plaintiff to work from home, or that Mestel had previously allowed Plaintiff to work from home on a recurring (or even a sporadic) basis.  Consequently, *Weng* is factually inapposite to Plaintiff's claim.

Plaintiff also argues that there are unique circumstances that make the denial of his telework request an adverse employment action.  Specifically, he contends that he sought to work remotely for the three days before his trial because he "was truly fearful that Co-Worker 1 would try some malicious stunt to entrap him into violating a court order requiring him to remain at least 100 yards away from Co-Worker 1 prior to their trial."  Opp'n, p. 9.  In this respect, he argues that the denial of his telework request "subjected him to contempt of court charges that were reasonably foreseeable based on Co-Worker 1's malicious behavior that was fueled by Defendants' failure to police its workplace."  Opp'n, p. 10.  These arguments cannot rescue his claim.  First, the possibility that a coworker might "try some malicious stunt to entrap him" is an "unduly speculative" harm that cannot form the basis for a materially adverse employment action. *Hornsby*, 217 F. Supp. 3d at 64 (in order for an employment action to be materially adverse, it must cause "objectively tangible harm" that is not "unduly speculative" (quoting *Bridgeforth*, 721 F.3d at 663 (internal citation and quotation marks omitted)).  Second, these potential harms are extrinsic to the workplace, and an adverse employment action must impact "the terms, conditions, or privileges of one's *employment*."  *Edwards*, 456 F. Supp. 2d at 86 (emphasis added).

Plaintiff offers no other plausible basis for treating the alleged denial of his three-day telework request as an adverse employment action.  Plaintiff seems to argue that the denial of his request to work from home was an adverse employment action because it "prevented him from

7

earning compensation *or* subjected him to contempt of court charges[.]"  Opp'n, p. 10 (emphasis added).  To the extent this can be construed as an argument that Plaintiff incurred an actual loss of compensation due to the denial of his telework request, no such factual allegation appears in the Third Amended Complaint.  Moreover, while Plaintiff artfully alleges that Patti Ayala denied his request to work remotely, he does not dispute that she approved the request later *that very same day* upon learning that Morrison did not object.  *See* Defs.' Mot. to Dismiss (ECF No. 32-1, filed under seal) (hereinafter "MTD"), p. 26.  Inasmuch as Plaintiff was not actually deprived of the opportunity to work remotely during the three days before his trial, his only "harm" was receiving a denial decision that was later reversed.  This hardly constitutes the sort of "significant" change of employment status required for material adverse action.  *See Moore v. Ashcroft*, 401 F. Supp. 2d 1, 24-25 (D.D.C. 2005) (adverse action necessarily entails a "significant" change in employment status) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Second, as with his "workstream" theory against Morrison, Plaintiff likewise offers no plausible factual basis for inferring that, but for his race, Mestel would have approved his remote work request in the first instance.  Plaintiff incorrectly argues that he has no obligation to articulate how Mestel treated him differently than any similarly situated person of another race.  Opp'n, p. 11.  In so doing, he simply ignores legal authority explaining that to raise a plausible inference of discrimination through comparator evidence alone, a plaintiff must show "that the relevant aspects of his employment situation were nearly identical to those of the other employee[s]."  *Burley*, 801 F.3d at 301 (quoting *Holbrook*, 196 F.3d at 261).

For these reasons, Plaintiff's race-based disparate treatment claim against Mestel must be dismissed.

II.     **Plaintiff's Section 1981 or Title VII Hostile Work Environment Claims Against Morrison and Mestel Fail.**

As Defendants explained in their opening brief, Plaintiff's hostile work environment claims under Section 1981 and Title VII must be dismissed because (A) he fails to link the disparate allegations of this claim into a coherent whole; (B) he fails to explain how any unwelcome conduct was attributable to his race, color, or sex; (C) he fails to show how he experienced any unwelcome conduct that was sufficiently "severe or pervasive" to support a claim; and (D) he fails to explain how any of the conduct at issue in his hostile work environment claim can be legally imputed to Morrison or Mestel.  Plaintiff ventures a few arguments in response, but none salvages his claims. Each of these points is addressed below.

**(A)**  Plaintiff does not dispute that the "constituent acts [of a hostile work environment claim] must be "adequately linked" in order to give rise to a "coherent" claim. *Baird v. Gotbaum*, 792 F.3d 166, 168-69 (D.C. Cir. 2015) (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)).  Instead, he attempts to knit together the nine "events" of his hostile work environment claim in two ways, neither of which succeeds.  *See* TAC ¶ 74 (identifying the nine "events" in his hostile work environment claim).  First, he contends that one of these events—not being assigned to a workstream—was a "continuous event" that ran from the first day of his work at Morrison's offices on July 1, 2019, through his assignment to a workstream on September 20, 2019.  Plaintiff does not elucidate his reasoning on this point.  Even if this one "event" were construed to be continuing in nature, it still would not link to the other eight discrete (and unrelated) events upon which Plaintiff seeks to base his claim.  Moreover, this "event" forms the singular basis for Plaintiff's disparate treatment claim against Morrison, and "this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of [discrimination] into a broader hostile work environment claim." *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 91 (D.D.C. 2019) (quoting

*Mason v. Geithner* , 811 F. Supp. 2d 128, 177 (D.D.C. 2011), quoting *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008)).

Otherwise, Plaintiff argues that Evan Harris and Natalie Fleming Nolen "either caused or failed to prevent or mitigate the abusive behavior in seven of the nine events" listed in paragraph 74 of the Third Amended Complaint. Plaintiff does not explain which seven events these were, which events implicate Ms. Fleming Nolen rather than Mr. Harris, or which events either person "caused" rather than "failed to prevent." Although not apparent in his brief or in paragraph 74 of the Third Amended Complaint, Plaintiff alleges elsewhere in his pleading that Mr. Harris was responsible for stating that prepaid wireless customers are "low class," and for separately telling Plaintiff that he was not "wanted" back in a fifth-floor conference room. *See* TAC ¶ 19, 29. Beyond that, Plaintiff offers nothing more than speculation to suggest that Ms. Fleming Nolen or Mr. Harris was even aware of the remaining events. He never alleges that he told Mr. Harris about these other events—let alone that Mr. Harris "failed to prevent or mitigate" them. As to Ms. Fleming Nolen, Plaintiff does not allege *any* facts connecting Ms. Fleming Nolen to any of the allegedly harassing events: he does not allege that he told her about them, that she otherwise heard about them, or that she "failed to prevent or mitigate" them. Consequently, Plaintiff's vague and conclusory assertion that Ms. Fleming Nolen and Mr. Harris were responsible for failing to "prevent or mitigate" what he perceived to be unwelcome conduct does nothing to forge the disparate allegations in paragraph 74 of the Third Amended Complaint into a coherent hostile work environment claim.

**(B)** Plaintiff's hostile work environment claim also fails because he makes no attempt to connect the nine "events" of that claim with his race, color, or sex—other than simply asserting

10

that "similarly situated non-protected class team members" were not "subjected to this abusive and hostile behavior."  Opp'n, p. 3.  That sort of conclusory rejoinder cannot breathe life into his implausible claims.  For instance, there is nothing remotely race- or gender-related (explicitly or otherwise) associated with a coworker not returning his morning greeting; even if true, perhaps the individual was just having a bad day and was less-than-cordial with everyone.  Likewise, the fact that another colleague falsely accused him of harassment is not race- or gender-related, nor is the alleged socio-economic description of prepaid wireless customers, which ostensibly applies to all races and genders who choose prepaid wireless plans.  Plaintiff offers no other explanation for how the allegations in his complaint "plausibly suggest the necessary connection between the events he finds abusive and his membership in a protected class."  *Hunter v. District of Columbia*, 797 F. Supp. 2d 86, 93-94 (D.D.C. 2011).   He does not address any of the arguments or case law in § II.B of Defendants' motion to dismiss, and thereby concedes them.  *See Stephenson*, 223 F. Supp. 2d at 121.

**(C)**  Plaintiff's hostile work environment claim fails because he cites absolutely no legal authority to explain how the allegations in his complaint rise to the level of the "severe or pervasive" conduct required for a hostile work environment claim, and he makes no effort to distinguish Defendants' cases indicating otherwise.  Plaintiff offers no support for the "severe or pervasive" element of his claim beyond simply alleging that an African-American secretary once asked, "How can you stand to be in that room?"  Opp'n, p. 3.  Plaintiff construes this statement as evidence that the secretary "also found the room toxic and abusive," *id.*, but that is pure speculation.  Even accepting that allegation as true, on its face, the secretary's statement could just as easily be construed to refer to the temperature in the room, noisy neighbors, abrasive lighting, or uncomfortable chairs, as to any conversations that took place there.  Moreover, even if Plaintiff

could allege that another employee thought he had experienced treatment that was "hostile and abusive," that would not make it "severe or pervasive" as a matter of law. Because Plaintiff has not shown that any of the conduct alleged in his complaint was "severe or pervasive" as a matter of law—and certainly not with any supporting case law that overcomes the substantial precedent included in Defendants' motion—his hostile work environment claim must be dismissed.

**(D)** Finally, Plaintiff's hostile work environment claim fails because he cannot show that the underlying conduct is legally imputable to Mestel or Morrison. Plaintiff argues, without citation to authority, that "liability can be imputed to corporate defendants through the actions or inactions of the corporation's employees." Opp'n, p. 4. But that oversimplification of the legal standard distorts the actual legal framework governing such claims. In *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013), the Supreme Court held that an employer can only be liable for coworker harassment if it was negligent in controlling working conditions. Plaintiff ignores this authority and offers only speculative, conclusory allegations to suggest that Morrison and Mestel were negligent in preventing any coworker harassment.

Plaintiff otherwise broadly asserts that all of the Individual Defendants are "supervisors," such that their conduct is automatically imputed to Morrison and Mestel, but he offers no plausible factual allegations to support this conclusory assertion. *See* § III.A., *infra*. Even if Plaintiff could show that the Individual Defendants were "supervisors" under *Vance*, however, this would not be sufficient to show that Morrison or Mestel is liable for the alleged unwelcome conduct at issue in Plaintiff's hostile work environment claim. Plaintiff does not attribute any of the nine "events" to Ms. Fleming Nolen, and he does not argue that two "events" he attributes to Mr. Harris (a Morrison *associate* attorney, it bears repeating) are independently actionable.

For all of these reasons, Plaintiff's Title VII and Section 1981 hostile work environment claims against Morrison and Mestel must be dismissed.

### III.     Plaintiff's Section 1981 Claims Against the Individual Defendants Fail.

#### A.     Plaintiff Fails to Allege Any Plausible Basis to Pursue His Section 1981 Disparate Treatment Claims Against Ms. Fleming Nolen and Mr. Harris.

Plaintiff claims he has provided "direct evidence" that Ms. Fleming Nolen and Mr. Harris exercised "supervisory authority" over him, such that he should be permitted to assert Section 1981 claims against them individually, as well as against Morrison.  Opp'n, p. 17 (citing TAC pp. 32-33, n.22 & PLA_EXHIBIT 6).  As Defendants pointed out in their motion to dismiss, this "direct evidence" is nothing more than an email in which Mr. Harris and Ms. Fleming Nolen discuss the timing and logistics for communicating *Mestel's* decision to end Plaintiff's assignment with Morrison, after *Mestel* (*i.e.*, "Patti and Stefanos") asked Morrison to do so.  MTD p. 20 n.4. Nothing in the email indicates Mr. Harris or Ms. Fleming Nolen possessed that authority themselves, and Plaintiff offers no rebuttal to this point.

Otherwise, the Third Amended Complaint repeatedly describes Ms. Fleming Nolen and Mr. Harris as Plaintiff's "supervisors," but such conclusory assertions do not support an inference that these individuals possessed sufficient authority "to make tangible employment decisions" about his work status in order to be "supervisors" for purposes of Section 1981.  When evaluating a motion to dismiss for failure to state a claim, district courts have no obligation "to accept as true a legal conclusion couched as a factual allegation."  *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)); *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (same); *see also, e.g., Barrett v. Pa. Steel Co.*, No. 2:14-cv-1103, 2014 WL 3572888, at *4 (E.D. Pa. July 21, 2014) (conclusory assertion that individual was "supervisor" was insufficient to plead supervisor status under Title VII without

13

factual allegations indicating that the individual had the authority of a supervisor); *Serrano v. I. Hardware Distrib., Inc.*, 2015 WL 4528170, at \*3 (S.D.N.Y. Jul. 27, 2015) (conclusory allegations that alleged employer "had the power to (i) fire and hire, (ii) determine the rate and method of pay and (iii) otherwise affect the quality of employment" were insufficient to support plausible claim of employer status under FLSA).

Plaintiff argues that Mr. Harris and Ms. Fleming Nolen must have been "supervisors" because they were the only Morrison employees with whom he interacted.  Opp'n, p. 17.  But interaction is not tantamount to supervision for purposes of Section 1981, and Plaintiff's rejoinder skirts the relevant analysis entirely.  Plus, other facts negate Plaintiff's conclusory say-so.  For instance, Plaintiff does not allege that he made Ms. Fleming Nolen aware of REDACT that allegedly precipitated his discharge; if she had been his "supervisor," presumably he would have reported his concern to her.  And as to Mr. Harris, Plaintiff continues to ignore altogether his status as Morrison *associate* attorney, which belies any plausible suggestion that Mr. Harris possessed independent authority to hire or fire Plaintiff (or anyone else) on behalf of Morrison.[4]

Moreover, Plaintiff effectively concedes that he lacks any factual basis to allege that Mr. Harris or Ms. Fleming Nolen were personally involved in the decision about whether and when to assign him to a "workstream"—the sole basis for his Section 1981 disparate treatment claims against them.  At most, he contends that Mr. Harris and Ms. Fleming Nolen "directed Plaintiff to work on integration calls not previously assigned to specific integration team members . . . [and] Plaintiff was not assigned to a particular workstream as was customary for team members until on or about September 20, 2019."  Opp'n, p. 17 (citing TAC ¶ 22).  He clearly alleges, in active voice, that Mr. Harris and Ms. Fleming Nolen directed him to work on unassigned

---

[4] Indeed, nobody at Morrison had that authority as to Plaintiff, only Mestel did.

integration calls, but that is not part of his claim.  Then, Plaintiff abruptly shifts to the passive voice when mentioning his assignment to a workstream, deliberately stopping short of alleging that Mr. Harris and Ms. Fleming Nolen had any personal involvement in his assignment to a workstream.  Indeed, Plaintiff concedes that he has no factual basis for making such an allegation because he has not yet had "the benefit of discovery to provide specific emails showing that Mr. Harris or Ms. Nolan [sic] 'directed' or 'told' or 'caused' Plaintiff not to be assigned to a particular workstream[.]"  Opp'n, pp. 17-18.  Plaintiff is not entitled to proceed to discovery in hopes that he may discover some plausible basis for a claim, as this is what the Supreme Court sought to remedy through *Twombly* and *Iqbal*.  *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (observing that heightened pleading standard in *Twombly* and *Iqbal* was intended to counter the problem of "strike suits" and "frivolous litigation" by allowing courts to conduct a more searching evaluation of complaints early in the litigation process) (cited with approval in *Jones v. Horne*, 634 F.3d 588, 596 n.4 (D.C. Cir. 2011)).

Finally, even if Plaintiff could plausibly allege that Mr. Harris and Ms. Fleming Nolen were supervisors for purposes of Section 1981 and were personally involved in deciding when to assign him to a workstream, his disparate treatment claim against them would still fail for the same reason his claim against Morrison fails, *i.e.*, because (i) he has presented no discernible, non-speculative factual basis for concluding that the timing of his assignment to a workstream was an adverse employment action, and (ii) he has not come forward with sufficient factual allegations to raise a plausible inference that he would have been assigned to a workstream earlier "but for" his race.  *See* § I.A., *supra*.

### B.     Plaintiff Fails to Allege Any Plausible Basis to Pursue His Section 1981 Disparate-Treatment Claim Against Patti Ayala.

Plaintiff concedes that his disparate treatment claim against Patti Ayala is based entirely on her "denial" of his request to work remotely.  Opp'n, p. 18.  Consequently, Plaintiff's disparate treatment claim against Ms. Ayala fails for the same reasons as his disparate treatment claim against Mestel.  *See* § I.B., *supra.*  First, Ms. Ayala's decision to deny Plaintiff's request to work from home for a period of three days was not an adverse employment action, particularly where she reversed her initial decision later the same day and allowed Plaintiff to work from home for the entire time he requested.  Second, Plaintiff has not plausibly alleged this his race was the "but for" cause of Ms. Ayala's initial decision to deny his telework request, inasmuch as he does not allege that he was treated differently than any *similarly situated* comparator who failed to follow Mestel policy when asking to work from home.  *See* TAC ¶ 58 & Pl.'s Ex. 5 (confronting Plaintiff about his failure to follow Mestel policy by presenting his request to Morrison in the first instance).  Third, Plaintiff has failed to present any non-conclusory factual allegations to indicate that Ms. Ayala had the authority to cause a "significant change in [Plaintiff's] employment status, such as hiring, firing . . . reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Vance*, 570 U.S. at 431 (quoting *Burlington Indus.*, 524 U.S. at 761)).  Plaintiff offers no persuasive rebuttal to any of these arguments.

### C.     Plaintiff Fails To Address, and Thus Concedes, the Individual Defendants' Dismissal Arguments As To His Hostile-Work Environment Claim.

Defendants' opening brief separately addressed why the handful of Plaintiff's allegations specifically directed at each Individual Defendant failed to state a claim against any of them, personally, for hostile work environment under Section 1981.  Defs.' Mot. to Dismiss, at 25-27.  Plaintiff failed to respond to those arguments.  He simply referenced back to his broader hostile-work-environment arguments—which of course implicate the alleged conduct of many other

individuals (co-workers in conference rooms, co-workers threatening legal action, and the like), and certainly not just Mr. Harris, Ms. Fleming Nolen, or Ms. Ayala. Pl.'s Opp. at 18. That rejoinder cannot suffice. To state plausible claims against Mr. Harris, Ms. Fleming Nolen, or Ms. Ayala, Plaintiff must explain how their own alleged conduct, individually, was actionably severe or pervasive, and was motivated by his race, color, or gender. As he does not even attempt such a showing, his hostile-work-environment claims against the Individual Defendants fail.

## IV.    Plaintiff's Claim for Wrongful Discharge in Violation of Public Policy Fails.

Through their opening brief, Defendants established that Plaintiff's wrongful discharge claim fails as a matter of law for several independent reasons. In response, Plaintiff tries to sidestep that reality by misstating the governing law and ignoring certain arguments altogether. Neither tactic saves his legally insufficient and implausible claim from dismissal.

To start, Plaintiff argues that he need not plead facts amounting to an *actual* violation of law in order to state a claim for wrongful discharge in violation of public policy, so long as he had a "reasonable belief" that he was reporting an actual violation. This misstates District of Columbia law. Indeed, Plaintiff concedes the D.C. Court of Appeals reached a different conclusion in *Bereston v. UHS of Del., Inc.*, 180 A.3d 95 (D.C. 2018), but inexplicably contends that *Bereston* is "non-controlling," and urges the Court to follow a group of earlier federal court decisions that, in his view, relieve him of any obligation to plead an actual violation of law. Plaintiff's wrongful discharge claim is rooted in District of Columbia common law, and "the views of the state's highest court with respect to state law are binding on the federal courts." *Parker v. Dugger*, 498 U.S. 308, 327 (U.S. 1991) (quoting *Wainwright v. Goode*, 464 U.S. 78, 84 (1983)). In short, *Bereston* trumps

any arguably conflicting federal court decisions on matters regarding the D.C. tort of wrongful discharge in violation of public policy.[5]

From there, Plaintiff's wrongful discharge claim fails under *Bereston* because, even accepting his allegations as true, he does not plead any actual violation of law. He cites no legal authority indicating that REDACT                                    is *always* competitively sensitive information,[6] and he provides no factual context to show how such information was competitively sensitive under the circumstances of this case. Equally important, he does not and cannot cite any authority indicating that the exchange of competitively sensitive information is itself a violation of antitrust law. *See United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 113 (1975) (exchange of competitive sensitive information is not a *per se* violation of federal antitrust law); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1487 (D.C. Cir. 1984) (holding that "it is not enough to prove that the alleged co-conspirators merely exchanged information"). No violation occurs unless competitors *use* such information to engage in anticompetitive behavior, and Plaintiff does not allege that any such conduct occurred here. *See Twombly*, 550 U.S. at 556 (holding that an antitrust claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made"). Plaintiff argues that "[i]f a company knew REDACT

" Opp'n,

p. 13 n.7 (emphasis added). But the tort of wrongful discharge requires more than a hypothetical possibility of unlawful conduct, REDACT

i. Plaintiff cannot establish a viable wrongful discharge claim merely by alleging that

---

[5] This is especially true since the federal court decisions cited by Plaintiff pre-dated *Bereston*.

[6] REDACT

18

REDACT         *might* constitute competitively sensitive information in some circumstances, or

that competitors *could* use such information to engage in anticompetitive behavior.

Plaintiff's remaining arguments merit little attention.  He points out that some states have

REDACT                                          (Opp'n p. 13 n.7), but he offers no

coherent explanation for how this supports his claim.  The fact that REDACT

                                                constitute "competitively

sensitive information" in all cases, and Plaintiff provides no authority to the contrary.

Plaintiff cites the complaint in *U.S. v. Flakeboard Am. Ltd.*, No. 3:14-cv-4949 (N.D. Cal.),

as evidence of "the government's strong interest in going after merger parties . . . who exchange

competitively sensitive information prior to consummation of a merger."  Opp'n, p. 16 & n.11.  In

that case, however, the U.S. Department of Justice alleged that the defendants had "entered into a

*per se* unlawful agreement between competitors to reduce output and allocate customers" and had

"prematurely transferred operational control" of the target business to the acquiring business

during the HSR waiting period.  *See* Ex. A, p. 3 ¶ 5.  That is a far cry from what Plaintiff alleges

here, to be sure.  Plus, nothing in the *Flakeboard* complaint suggests that the exchange of

competitively sensitive information is unlawful by itself.

Plaintiff argues that a jury must decide the "question . . . whether, as Plaintiff has alleged,

REDACT                        between the companies, as noted by conversations Plaintiff overheard

during integration calls and the          REDACT                      , is indicia of gun-

jumping or transfer of beneficial ownership."  *Id.* at pp. 15-16.  Here, Plaintiff's argument leaps

from the implausible to the ridiculous.  Plaintiff provides absolutely no factual basis for alleging

that the merger parties engaged in an illicit "transfer of beneficial ownership" of any assets during

the Hart-Scott-Rodino review period.  Nor does he offer any plausible factual basis for surmising that the exchange of REDACT could be evidence of such a transfer.

Finally, Plaintiff fails to address any of the reasons why his complaint fails to state a wrongful discharge claim based on Rules 8.3(a) and 8.4(a)-(d) of the D.C. Rules of Professional Conduct ("DCRPC").  He does not dispute that Rule 8.3(a) is inapplicable because it "requires the reporting of misconduct to the *Office of Bar Counsel*, rather than to a supervisory attorney." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 884 n.19 (D.C. 1998) (emphasis added).  Nor does he allege facts constituting evidence of the "dishonest state of mind" required to prove a violation of Rule 8.4(c).  *In re Uchendu*, 812 A.2d 933, 939-40 (D.C. 2002) (citing *In re Stiller*, 725 A.2d 533, 538 (D.C. 1999)).  Plaintiff merely asserts that the Court should allow his claim under *Wallace*, but he fails to address any of Defendants' reasons why that case is inapposite. *Wallace* itself forecloses any claim based on Rule 8.3(a), and the sort of theory that the *Wallace* court posited *could* be plausible in different circumstances—*i.e.*, where the plaintiff alleged that lawyers had been knowingly altering court-filed documents without client consent and then lying to the clients about it, *Wallace*, 715 A.2d at 885—is worlds apart from the allegations Plaintiff offers here.

For all these reasons, Plaintiff's response does nothing to save his wrongful discharge claim from dismissal.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and dismiss the entirety of Plaintiff's Third Amended Complaint with prejudice, together with such relief as the Court considers proper and just.

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

 /s/ Christopher E. Humber
Christopher E. Humber (D.C. Bar 462447)
Jose E. Galvan (D.C. Bar. 1024903)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com
jose.galvan@ogletree.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this April 12, 2021, I caused the foregoing to be filed via the Court's CM/ECF system, with a copy to be served by regular mail and electronic mail upon *pro se* Plaintiff as follows:

Junius J. Joyner, III<br>
2220 Henry Watts Loop<br>
Woodbridge, VA 22191<br>
juniusjoyner@yahoo.com

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

 */s/ Christopher E. Humber*
Christopher E. Humber (D.C. Bar 462447)
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:  (202) 263-0260
Fax:  (202) 887-0866
chris.humber@ogletree.com

*Counsel for Defendants*

46748787.2

22