Leave to file GRANTED

TIMOTHY J. KELLY          DATE
United States District Judge

*This document may be filed on the public docket*
*TJK*

RECEIVED
Mail Room

APR 20

Angela D. Caesar, Clerk of Court
U.S. Bankruptcy Court, District of Columbia

UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA

**JUNIUS J. JOYNER, III,**

Plaintiff.

vs.

**MORRISON & FOERSTER LLP, ET AL.**

Defendants.

Case No:  1:20-cv-01440-TJK

**FILED UNDER SEAL**

**PROPOSED REDACTIONS
HIGHLIGHTED**

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED
COMPLAINT**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff, Junius J. Joyner, III, *Pro Se*, respectfully submits this Memorandum of Points

and Authorities in support of his response to Defendants' Motion to Dismiss Plaintiff's Third

Amended Complaint.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................. 1

II. ARGUMENT....................................................................................................... 2

    A. Corporate Defendants..................................................................................... 2

        1. Unlawful Employment Practices 42 U.S.C.A § 2000e-2(a)(1) Hostile
           Work Environment.................................................................................... 2

        2. 42 U.S.C.A § 1981 Hostile Work Environment - No Tangible
           Employment Action.................................................................................. 4

        3. 42 U.S.C.A § 1981 - Equal Rights Under the Law.................................... 5

        4. Wrongful Discharge in Violation of Public Policy................................... 11

    B. Individual Defendants..................................................................................... 16

        1. 42 U.S.C.A § 1981 Equal Rights Under the Law....................................16

        2. 42 U.S.C.A § 1981 - Hostile Work Environment - No Tangible
           Employment Action  Individual Defendants............................................. 18

III. CONCLUSION.................................................................................................. 19

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................... 14

*Beckham v. Nat'l R.R. Passenger Corp.,* 736 F.Supp.2d 130 (D.D.C.2010)................... 9

*Bereston v. UHS of Deleware, Inc.,* 180 A.3d 95 (D.C. 2018)...................................... 12

*Blackmon-Malloy v. United States Capitol Police Bd.,* 338 F.Supp.2d 97 (D.D.C. 2004)..........8

*Brodetski v. Duffey*, 141 F. Supp. 2d 35 (D.D.C. 2001)..................................... 5, 6, 7, 9

*Brown v. Brody,* 199 F.3d 446 (D.D.C 1999)................................................................ 7

*Brown v. Jewell,* 134 F. Supp. 3d 170 (D.D.C. 2015)........................................... 8, 9, 10

*Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998)........................................... 4

*Byrd v. Vilsack,* 931 F.Supp. 2d 27 (D.D.C.2013)......................................................... 9

*Carl v. Children's Hosp.,*702 A. 2d 159 (D.C. 1997)............................................... 12, 13

*Childers v. Slater,* 44 F.Supp.2d 8 (D.D.C.1999)......................................................... 7

*Douglas v. Donovan,* 559 F.3d 549 (D.C. Cir. 2009)..................................................... 8

*Fingerhut v. Children's Nat. Med. Ctr.,* 738 A.2d 799 (D.C.1999)............................... 12

*Furnco Constr. Corp. v. Waters,* 438 U.S. 567 (1978)................................................... 5

*Gary v. Washington Metro. Area Transit Auth.,* 886 F.Supp. 78 (D.C.1995).................... 7

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993)...................................................... 4

*Hayes v. City of Chicago,* 670 F.3d 810 (7th Cir. 2012)............................................... 13

*Hunter v. Clinton,* 653 F. Supp. 2d 115 (D.D.C. 2009).......................................5, 7, 8, 9

*Kilpatrick v. Riley,* 98 F.Supp.2d 9 (D.D.C.2000)......................................................... 7

*Leyden v. Am. Accreditation Healthcare Comm'n,* 83 F. Supp. 3d 241 (D.D.C. 2015)...........12, 14

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973)...................................................... 5

*Mungin v. Katten, Muchin & Zavis,* 116 F.3d 1549 (D.C.Cir.1997)................................ 8

*Myers v. Alutiiq International Solutions, LLC,* 811 F.Supp. 2d 261 (D.D.C. 2011)..................... 12

*Riggs v. Homebuilders Institute,* 203 F. Supp. 2d 1 (D.D.C 2002)................................13

*Stewart v. Evans,* 275 F.3d 1126, (D.C.Cir. 2002)........................................................ 8

*Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002)............................................... 5, 11

*Thomas v. Guardsmark, Inc.*, 381 F.3d 701 (7th Cir. 2004).........................................................13

*Townsend v. U.S.*, 236 F. Supp 3d 280 (D.D.C 2017)...........................................................3, 11

*Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1 (D.D.C. 2019).............................................8, 10

*U.S. v. Flakeboard America et al.*, Case No. 3:14-cv-4949................................................16

*Vreven v. American Association of Retired Persons*, 604 F. Supp. 2d 9 (D.D.C. 2009)...............13

*Walker v. Washington Metro. Area Transit Auth.*, 102 F.Supp.2d 24 (D.D.C.2000).......................7

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C.1998)...........................14

*Washington v. Guest Servs., Inc.*, 718 A.2d 1071 (D.C.1998).......................................12

*Weng v. Solis*, 960 F.Supp.2d 239 (D.D.C.2013)..............................................9, 10

**Statutes**

15 U.S.C. § 18 (g)(1)...............................................................................................15

15 U.S.C. §18a.................................................................................................12, 14

16 C.F.R. § 1.98..............................................................................................16

16 C.F.R. § 801.1 (c) (1)....................................................................................15

42 U.S.C.A § 1981 - Equal Rights Under the Law..............................................1, 5, 17,19

42 U.S.C.A § 1981 - Hostile Work Environment - No Tangible Employment Action..........1, 4, 19

42 U.S.C.A § 2000e-2(a)(1) Hostile Work Environment - Unlawful Employment Practices.1, 2, 4

42 U.S.C.A. §§ 2000e et seq..................................................................................1

California Labor Code § 246 (2109)........................................................................13

Clayton Act Section 7A.....................................................................................15

Code of the District of Columbia § 28-4501............................................................12

Code of the District of Columbia §28-4503.............................................................12

Code of the District of Columbia §28-4506.............................................................12

Code of the District of Columbia §28-4508.............................................................12

District of Columbia Labor Code § 32-531.02..........................................................13

Hart-Scott-Rodino Antitrust Improvements Act of 1976 HSR.............................12, 14, 16

Title VII of the Civil Rights Act of 1964....................................................1, 4, 9

## Other Authorities

DOJ Final Judgment https://www.justice.gov/atr/case-document/file/496471/download (last visited March 28, 2021)..................................................................................... 16

DOJ Press Release https://www.justice.gov/archive/atr/public/press_releases/2002/11029.htm (last visited March 28, 2021)..................................................................................16

H.R. Rep. No. 94-1373 (1976).......................................................................................... 15

S. Rep. No. 94-803 (1976)................................................................................................. 15

## Rules

District of Columbia Bar Rules of Professional Conduct Rule 8.3.................................12

District of Columbia Bar Rules of Professional Conduct Rule 8.4.................................12

F.R.C.P. Rule 12(b)(6)...................................................................................................... 13

F.R.C.P. Rule 8(a)...................................................................................................13, 18

# I. INTRODUCTION

1.      On February 9, 2020, Plaintiff filed charges with the EEOC against Defendants Morrison & Foerster LLP ("MOFO") and Mestel & Company New York LLC ("Hire Counsel") (collectively, "Corporate Defendant(s)"). Upon receiving his right to sue letter, on May 29, 2020, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq., Plaintiff filed a Complaint with this Court alleging four claims against MOFO and three claims against Hire Counsel. Plaintiff has since amended his Complaint to add additional Individual Defendants[1] and an additional claim against Hire Counsel.

2.      On February 21, 2021, this Court granted Plaintiff's Motion for Leave to File Third Amended Complaint. Plaintiff's Third-Amended Complaint ("TAC") against the Corporate Defendants, jointly and individually, alleges: Count I - 42 U.S.C.A § 2000e-2(a)(1) Hostile Work Environment - Unlawful Employment Practices; Court II - 42 U.S.C.A § 1981 - Equal Rights Under the Law; Count III - 42 U.S.C.A § 1981 - Hostile Work Environment — No Tangible Employment Action; and Count IV – Wrongful Discharge in Violation of Public Policy. Additionally, Plaintiff, against Individual Defendants individually, alleges: Count I - 42 U.S.C.A § 1981 - Equal Rights Under the Law; and Count II - 42 U.S.C.A § 1981 - Hostile Work Environment - No Tangible Employment Action.

3.      On March 4, 2021, Defendants filed a Motion to Dismiss all counts of Plaintiff's TAC ("MTD_TAC"). Defendants' MTD_TAC offers the same arguments presented in their earlier Motion to Dismiss Plaintiff's Second Amended Complaint and has been made effectively moot by the Plaintiff's TAC. Despite this Plaintiff will separately address each argument presented by Defendants' MTD_TAC.

---

[1] Individual Defendants are Patti Ayala, Evan M. Harris, and Natalie A. Fleming-Nolen.

## II. ARGUMENT

### A. CORPORATE DEFENDANTS

1. <u>Unlawful Employment Practices 42 U.S.C.A § 2000e-2(a)(1) Hostile Work Environment</u>

4.   Defendants' argue in their MTD_TAC that Plaintiff's TAC does not support a claim against Corporate Defendants for a Hostile Work Environment because: "(1) his allegations are disperse and not sufficiently linked; (2) his allegations are unrelated to his race, color, or sex; (3) his allegations are not sufficiently severe or pervasive; and (4) his allegations are not imputable to the Defendants." MTD_TAC at 14.

5.   Defendants' argument that somehow allegations made in Plaintiff's TAC are disperse and not sufficiently linked is woefully inaccurate.   Plaintiff summarized in ¶ 74 of his TAC nine different instances or events constituting a Hostile Work Environment.   Moreover, one event, not being assigned to a workstream, was not a singular event but a continuous event that went on from his first day of employment, July 1, 2019, until he was finally assigned to a work stream on or about September 20, 2019.

6.   Even excluding this one continuous event, the facts and circumstances described in Plaintiff's TAC show a cohesive pattern necessary for a Hostile Work Environment action. Not only did the events and circumstances giving rise to this Cause of Action start on the Plaintiff's first day of work and continued through and until and on his last day of work, the principal actors imputing liability to MOFO, Evan M. Harris and Natalie A. Fleming-Nolen, remained the same throughout the duration of Plaintiff's employment.   Of the nine events and circumstances listed in ¶ 74 of the TAC, Mr. Harris and Mrs. Fleming-Nolen either caused or failed to prevent or

2

mitigate the abusive behavior in seven of the nine events.  This provides the necessary nexus to link the facts and circumstances Plaintiff experienced to a Hostile Work Environment pleading.

7.   Next the Defendants' argue that these nine events are somehow unrelated to "his race, color, or sex".  It's hard to fathom given the fact that Plaintiff is an African-American, and of the nine events cited no other non-protected class member experienced similar events and circumstances, Defendants would argue these events are unrelated to his race, color, or sex.

8.   Defendants' fail to acknowledge or recognize the inference of discrimination apparent by similarly situated non-protected class team members not being subjected to this abusive and hostile behavior.  As this Court in *Townsend  v. U.S.*, 236 F. Supp 3d 280, 309 (D.D.C 2017) stated, "Further, an inference of discrimination may be drawn where an "employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances."".  Accordingly, Defendants' argument must fail.

9.   Defendants' argument that Plaintiff's allegations are not sufficiently severe or pervasive is equally misguided and incorrect.   It's hard to imagine that someone would have to endure the events and circumstances cited in ¶ 74 of the TAC and yet this abuse could be considered "subjective".   However ridiculous and severely flawed this assertion is, it cannot overcome Plaintiff's pleading that an African-American secretary asked the Plaintiff, "How can you stand to be in that room?!".

10.   Without pleading every aspect of this conversation, the inference is clear, this African-American secretary also found the room toxic and abusive.   Consequently, the Plaintiff's impression of this environment cannot be categorized as subjective.   Moreover, this secretary's statement supports the objective component required under *Harris v. Forklift Systems, Inc.,* 510

1   U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) that this work environment was one "that a

2   reasonable person would find hostile or abusive." *Id.*

3
4   11.   Finally, the Defendants' last justification for why Plaintiff's pleading does not meet a

5   Hostile Work Environment Cause of Action is because his allegations are not imputable to the

6   Defendants.  This is equally as suspect and deficient as the former three arguments put forward.

7   Defendants are well aware, or should be, liability can be imputed to corporate defendants through

8   the actions or inactions of the corporation's employees.

9
10  12.   Contrary to Defendants' MTD_TAC, Plaintiff has alleged, and as evidenced in

11  PLA_EXHIBIT 6 of his TAC, all Individual Defendants maintained supervisory authority over

12  the Plaintiff because they had the authority to fire or cause a significant change in benefits.

13  Therefore, under *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761 (1998),[2] Plaintiff can

14  impute liability to Corporate Defendants.

15
16      2.   42 U.S.C.A § 1981 Hostile Work Environment - No Tangible Employment Action

17  13.   Plaintiff's arguments put forth in his Unlawful Employment Practices 42 U.S.C.A § 2000e-

18  2(a)(1) Hostile Work Environment Cause of Action alleged above are equally applied to his 42

19  U.S.C.A. § 1981 Hostile Work Environment - No Tangible Employment Action Cause of Action.

20  As asserted in his TAC at n.13, the requirements necessary to plead a Title 42 U.S.C. A. § 2000e-

21  2(a)(1) a claim are the same under § 1981.   As such Defendants' motion to dismiss this Cause of

22  Action must also fail.

23

24

25  [2] The *Burlington* Court held, "that an employee is a "supervisor" for purposes of vicarious
    liability under Title VII if he, or she is empowered by the employer to take tangible employment
26  actions against the victim, i.e., to effect a "significant change in employment status, such as
    hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a
27  decision causing a significant change in benefits."". *Id.*

28

                                                                                          4

### 3. <u>42 U.S.C.A § 1981 - Equal Rights Under the Law</u>

14. Defendants' argue in their MTD_TAC that Plaintiff's TAC does not support a claim against Corporate Defendants for violations of 42 U.S.C.A. § 1981 because his claims: (1) as against Morrison, that he was "not … assigned to workstreams" as soon as he would have preferred; and (2) as against Mestel, that he was "denied the ability to work remotely.", do not rise to adverse actions under § 1981, and (3) Plaintiff has not properly alleged that "but for" his race or color he would not have suffered the adverse actions plead.". MTD_TAC at 10-11.

15. As a threshold matter, in contrast to the specificity imposed by the Defendants' MTD_TAC, the Court in *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002) held, "An employment discrimination complaint need not contain specific facts establishing a prima facie case under the *McDonnell Douglas* framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief,". Fed. Rule Civ. Proc. 8(a)(2). "Moreover, the precise requirements of the prima facie case can vary with the context and were "never intended to be rigid, mechanized, or ritualistic." (Quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957). "It may be difficult to define the precise formulation of the required prima facie case in a particular case before discovery has unearthed relevant facts and evidence. Consequently, the prima facie case should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz,* at 512.

16. Defendants' argument that somehow not being assigned to a workstream is analogous to a "less desirable job assignment" fails because the facts and circumstances of this case are wholly distinguishable from the cases cited by the Defendants. The Defendants cite *Brodetski v. Duffey,* 141 F. Supp. 2d 35, 45 (D.D.C. 2001) and *Hunter v. Clinton,* 653 F. Supp. 2d 115, 121 (D.D.C. 2009) in support of their argument.

17. In *Brodetski,* the plaintiff alleged his employer: 1) "[denied] his administrative requests and subject[ed] him to inconvenient administrative changes", 2) "altered the department schedule, forcing him to ask for a change in his personal schedule in order to avoid coming in two hours early for his shift.", and 3) "denied him his right to select a new work station based on his seniority within the office.". *Id.* at 39-40.

18. In each instance the Court found the events claimed did not rise to an adverse event, specially stating: 1) "defendants' decision has not hindered plaintiff's EEO participation, and because defendants based their denial on an EEOC Administrative Judge's order, plaintiff's allegations that he was denied sufficient administrative leave cannot constitute a cognizable adverse employment action.", 2) "Nor has plaintiff demonstrated that defendants' decision to change the office schedule . . . constituted an adverse employment action. Although plaintiff alleges that, because of the schedule revisions, he was forced to come in two hours early for his shift, "a mere inconvenience" is not sufficiently adverse to sustain a prima facie case.", and 3) "Plaintiff's allegations that defendants denied him his right to choose a new workstation on two occasions do not constitute adverse employment actions even if they made plaintiff feel slighted or wronged . . . ("not everything that makes an employee unhappy will constitute actionable adverse action")," respectively. *Id.* at 44-46.

19. On its face the facts of this case differ greatly from *Brodetski.* The plaintiff in *Brodetski* suffered inconveniences and slights that did not rise to tangible events that constituted a material mployment disadvantage.[3] Plaintiff not being assigned to a workstream for more than two

---

[3] The *Brodetski* Court stated, "Although "an employee need not be fired, demoted or transferred" for an adverse employment action to occur, *see Gary v. Washington Metro. Area Transit Auth.,*

months was a material employment disadvantage and not a mere inconvenience or slight.

20.   Plaintiff already alleged in ¶ 23 of his TAC not being able to take phone calls as early or as late as attorneys assigned to workstreams dramatically reduced the number of hours that Plaintiff could work and therefore reduced his ability to earn compensation like Caucasian or otherwise non-protected class members.  This is far from the trivial complaints made by the plaintiffs in *Brodetski* or *Hunter*.

21.   In *Hunter*, the plaintiff alleged the following adverse employment actions: "(1) he did not receive high-value grant cases as part of a reassignment following another employee's retirement; (2) one of his audits was not cleared promptly; (3) Ms. Allen, Chief of the Grants Division, requested that plaintiff's direct supervisors review his completed files, something they did not do for other employees; and (4) plaintiff received an "Excellent" rather than an "Outstanding" performance rating in 2003." *Id.* at 121.

22.   The Court in Hunter concluded:

> that the events of which plaintiff complains did not have "materially adverse consequences affecting the terms, conditions or privileges" of the plaintiff's employment. *Douglas v. Donovan,* 559 F.3d at 552." or "how this asserted variation in the quality of reassignments had "any effect on [the] salary, benefits, or grade" of his employment or

886 F.Supp. 78, 90 (D.D.C.1995), an "employment decision does not rise to the level of an actionable adverse action ... unless there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage.'" *Walker v. Washington Metro. Area Transit Auth.,* 102 F.Supp.2d 24, 29 (D.D.C.2000) (quoting *Kilpatrick v. Riley,* 98 F.Supp.2d 9, 21 (D.D.C.2000), citing *Brown,* 199 F.3d at 456, and *Childers,* 44 F.Supp.2d at 19), *Brodetski,* at 43.

7

future employment opportunities. *Blackmon-Malloy v. United States Capitol Police Bd.*, 338 F.Supp.2d at 106. Without more, "an undesirable assignment" does not constitute an adverse employment action." *Id.; see also Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C.Cir. 2002) (incorporating opinion of district court) ("changes in assignments and work related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes") (quoting *Mungin v. Katten, Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C.Cir.1997)).

*Hunter*, at 121.

23. Plaintiff asserted in his TAC failure to assign him to a workstream like all other non-protected class members was a material employment disadvantage because Plaintiff was restricted from earning compensation similar to non-protected class members. Again, wholly separate and distinct from the facts in *Hunter*. Accordingly, Defendants' argument falls flat.

24. Next Defendants' rely on *Brown v. Jewell*, 134 F. Supp. 3d 170, 181 (D.D.C. 2015) and *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 8 (D.D.C. 2019) to argue Hire Counsel's failure to allow Plaintiff to work remotely was not an adverse employment action. Both *Brown* and *Tyes-Williams* are distinguishable from the facts of Plaintiff's case and therefore Defendants' reliance on these cases is equally flawed.

25. Looking at *Brown* first, the plaintiff had "requested that he be permitted to work remotely for two days per week to reduce his commute" but was denied because he did not provide "a medical justification".[4] *Id.* at 173. In denying the plaintiff's claim the Court stated:

Courts in this and other jurisdictions have repeatedly held that denial of a request to telework on its own does not constitute an

---

[4] In *Brown*, the plaintiff had requested remote work because "he could perform 80–90% of his work duties from home, and he requested telework because he primarily supervised employees on the West Coast, meaning that he often had to stay at work late.". *Id.* At 173.

adverse employment action. *See, e.g., Byrd v. Vilsack,* 931 F.Supp.2d 27, 41 (D.D.C.2013) ("the denial of an employee's request to work from home on a few occasions, without more, does not constitute an adverse employment action under Title VII"); *Beckham v. Nat'l R.R. Passenger Corp.,* 736 F.Supp.2d 130, 149 (D.D.C.2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action.")"

*Brown* at 181.

26. In essence the Court in *Brown* found the denial to work remotely a "a minor annoyance", similar to an inconvenience or slight contemplated under *Brodetski* or *Hunter.* Notwithstanding this, the *Brown* Court cited *Weng v. Solis,* 960 F.Supp.2d 239, 249 (D.D.C.2013) "(holding that plaintiff's *removal* from a program that had allowed plaintiff "to work from home one day a week ... constituted an adverse employment action" because a "reasonable fact finder could find that this materially affected the terms, conditions, or privileges of [plaintiff's] employment") (internal quotation marks omitted)". *Brown* at 181. Clearly the decision in *Weng* demonstrates that some denials to work remotely are adverse events, which is the case here.

27. Plaintiff did not request to work remotely for mere convenience or some other fanciful reason. Plaintiff had been subjected to false and outrageous accusations by Co-Worker 1, to the point where Co-Worker 1 was filing Domestic Violence charges against him when she did not have standing or the court could not exercise subject-matter jurisdiction on the parties because they had no relationship under the appropriate statute. Despite this, Co-Worker 1 persisted. At the time Plaintiff made his request, Plaintiff was truly fearful that Co-Worker 1 would try some malicious stunt to entrap him into violating a court order requiring him to remain at least 100 yards away from Co-Worker 1 prior to their trial. Accordingly, Plaintiff explained this to Hire Counsel and his request was denied. Given that Hire Counsel previously failed to investigate the Plaintiff's previous allegations of harassment (TAC ¶¶ 52-53), Plaintiff believed Hire

9

Counsel either did not care that Plaintiff could be sent to jail for contempt of court or was complicit in Co-Worker 1's behavior.

28. Not only do these facts and circumstances distinguish this case from *Brown,* and are analogous to *Weng,*[5] Plaintiff, as well as other similar situated Hire Counsel employees, had previously been allowed to work from home. TAC at ¶ 57. Hire Counsel's failure to allow Plaintiff to work from home amounted to a material adverse employment action because it prevented him from earning compensation or subjected him to contempt of court charges that were reasonably foreseeable based on Co-Worker 1's malicious behavior that was fueled by Defendants' failure to police its workplace. Considering this there is no need to consider *Tyes-Williams* where this Court found plaintiff's vague performance evaluations and delayed personnel actions were not materially adverse employment actions.

29. Finally, the last argument Defendants put forward as a reason for Plaintiff's failure to state a Section 1981 claim is that Plaintiff has not established "a connection between those events and his race and color". MTD_TAC at 11. Defendants' analysis and argument is misguided.

30. As a threshold matter, as stated in *Townsend,* at 309 (D.D.C 2017), "an inference of discrimination may be drawn where an "employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances.". *Id.*

31. Plaintiff, regarding MOFO, has alleged during his employment "two new attorneys (Co-Worker 1 and 2) were added to the project and both were immediately assigned to workstreams

---

[5] Plaintiff and other non-protected class members had previously been allowed to work from home, consequently the denial by Hire Counsel to allow Plaintiff to work from home is similar to being removed from the program MOFO had created such that "a reasonable fact finder could find that this materially affected the terms, conditions, or privileges of [plaintiff's] employment". *Weng,* at 249 (quoting *Brown,* 199 F.3d at 457).

whereas Plaintiff had to wait more than two-and-a-half months before being assigned to a team. Both attorneys were Caucasian.   Additionally, on information and belief, the most recent attorney (Co-Worker 3) hired prior to Plaintiff being hired was also immediately assigned to a workstream.   This attorney was also Caucasian. Moreover, on information and belief, in contrast to the Plaintiff, all attorneys that were non-protected class members hired through Hire Counsel were immediately assigned to workstreams.".  TAC n.2.

32.  Additionally, as to both Corporate Defendants, Plaintiff has alleged that his race was the "determinative factor" in the alleged discrimination.    TAC ¶ ¶ 82, 134. Defendants' assertion that Plaintiff needs to articulate in detail how non-protected class members were similarily-situated to him misses the guidance provided under *Swierkiewicz,* meaning at the pleading stage requirements for a prima facie case should not be transposed into a rigid pleading standard.  *See,* *Swierkiewicz,* at 512.  To do otherwise would require every potential plaintiff to be on guard and accumulate as much information about their fellow colleagues so in the event they have to bring a discrimination case they have the necessary information. That is the purpose of discovery.

4.  Wrongful Discharge in Violation of Public Policy

33.  Defendants' argue that Plaintiff's TAC does not support a Wrong Discharge in Violation of of Public Policy because he " (i) fails to identify any conduct that plausibly could be construed as an actual violation of federal or state antitrust laws, ii) "does not identify any specific statute or regulation that bears a "close fit" to the conduct at issue in his alleged termination; and (iii) fails to show how his alleged discharge implicated any clear mandate of public policy embodied in Hart-Scott-Rodino Antitrust Improvements Act of 1976 HSR, 15 U.S.C. §18a ("HSR Act"), Code of the District of Columbia §§28-4501(a) & (b), 28-4503, 28-4506, and 28-4508, and the

11

District of Columbia Bar Rules of Professional Conduct Rules 8.3 and 8.4 ("Professional Rules").

MTD_TAC at 29.

34.  Defendants' argument that Plaintiff need identify an actual violation of federal or state

antitrust law, citing the non-controlling decision in *Bereston v. UHS of Deleware, Inc.*, 180 A.3d

95 (D.C. 2018), misstates the law in this jurisdiction.   This Court in *Leyden v. Am. Accreditation*

*Healthcare Comm'n*, 83 F. Supp. 3d 241, 249 (D.D.C. 2015) has stated:

> "Since *Carl*, District of Columbia courts and federal courts in this
> district have applied the public policy exception to a number of
> alleged retaliatory discharges, including those of employees who
> threatened to disclose a pharmaceutical company's violations of drug-
> storage regulations, *Liberatore,* 168 F.3d at 1327; exposed potential
> violations of a non-profit employer's tax-exempt status, *Vreven*, 604
> F. Supp 2d at 11; protested food contamination at a nursing home,
> *Washington v. Guest Servs., Inc.,* 718 A.2d 1071, 1072 (D.C.1998) ;
> reported a bribe, *Fingerhut v. Children's Nat. Med. Ctr.,* 738 A.2d
> 799, 801 (D.C.1999); and aided an investigation into conduct
> prohibited by federal contracting regulations, *Myers,* 811 F.Supp. 2d
> at 267. The common denominator in all of these cases is the existence
> of specific laws or regulations that clearly reflect a policy prohibiting
> the activity about which the employee complained, ***whether or not***
> ***the employer actually violated the law or regulation***."

*Leyden*, at 249. (***emphasis added***)[6]

35.  REDACT

---

[6] Additionally, this Court in *Vreven v. American Association of Retired Persons*, 604 F. Supp. 2d
9 (D.D.C. 2009), denied defendant's motion to dismiss plaintiff's Wrongful Termination Against
Public Policy allegation finding: "While plaintiff has not specified the manner in which AARP
allegedly violated its tax exempt status under Section 501(c)(4) and evaded or avoided taxes,
other than through its relationship with AGN, Compl. ¶¶ 9-10, the Court finds her allegations
sufficient under Rule 8(a) and *Twombly* to invoke the *Carl* exception. *See* Holman v. Williams,
436 F. Supp. 2d 68 at 78; *Riggs v. Homebuilders Institute*, 203 F. Supp. 2d 1 (D.D.C 2002) 2d at
21-22. They make plausible the conclusion that defendant discharged plaintiff as a result of her
objections to ***alleged violations*** of defendant's tax exempt status.". *Vreven*, at 14. (***emphasis
added***).  Clearly this Court does not require Plaintiff's pleading to allege actual violations of the
law.

REDACT

36.   In assessing a complaint under Rule 12(b)(6), the Court takes all "well-pled allegations as true and drawing all reasonable inferences in Hayes's favor, we will affirm a Rule 12(b ) dismissal "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." (quoting *Thomas v. Guardsmark, Inc.,* 381 F.3d 701, 704 (7th Cir. 2004))." *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

37.   A complaint meets this standard where it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In short, a motion to dismiss must be granted only where the plaintiff could not possibly prevail, even assuming the truth of each factual allegation in the complaint. *Id.*  The question as to whether REDACT

, that later became the basis for conversations the Plaintiff overheard, is competitively sensitive is a question of fact, and not law, and is therefore appropriate for a jury to hear and decide. As such, the first prong of the Defendants' argument must fail.  The second and third prongs of Defendants' argument are equally lacking and ultimately made moot by

7 REDACT

13

Plaintiff's TAC.¶¶ 98-122.  Notwithstanding, Plaintiff offers facts showing the HSR Act is a statute or regulation showing a public policy interest that "clearly reflect a policy prohibiting the activity about which the employee complained" and has a clear public policy mandate to prohibit the conduct alleged.[8]  *Leyden,* at 249.

38. Title 15 U.S.C. 18 states in part:

> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, *the effect of such acquisition* **may** *be substantially to lessen competition,* or to tend to create a monopoly.
>
> *Id. (emphasis added).*

39. The HSR Act codifies Section 7A of the Clayton Act (Section 7A). PLA_EX_ 1.  Section 7A creates statutory notification and waiting periods for companies acquiring indirect or direct ownership of a target company if the size of the transaction meets certain threshold requirements. The threshold requirements are based on the amount of voting securities the acquiring company would hold after the transaction is completed.  The definition of "hold" is defined in 16 C.F.R. § 801.1 (c) (1) as "beneficial ownership".  *Id.*

40. Prior to notification and waiting periods enacted under Section 7A, federal agencies were restricted to unwinding uncompetitive mergers that had previously closed, a difficult task

---

[8] Plaintiff does not address violations of Professional Rules because he has already asserted, in his TAC ¶115, the court in *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 883-886 (D.C.1998) provided reasons why the Plaintiff could not prevail on a similar Wrongful Discharge in Violation of Public Policy claim that asserted similar Professional Rules showing the public interest having a nexus to the alleged activity of the defendant.  Again, the *Wallace* court stated, "If the plaintiff had alleged that she was discharged solely, or perhaps even primarily, for reporting the alteration of "as filed" documents, and for no other reason, we would have a different case." *Id.* at 885.

because company operations and assets were often "irrevocably changed and entwined".

PLA_EX_1 at 3.  ""The legislative history leading to the enactment of Section 7A demonstrates

Congress's intent to create a more effective enforcement mechanism "to detect and prevent

illegal mergers prior to consummation." Congress believed a premerger injunction is "often the

only effective and realistic remedy against large illegal mergers—before the assets, technology,

and management of the merging firms are hopelessly and irreversibly scrambled together, and

before competition is substantially and perhaps irremediably lessened. . .."" PLA_EX_1 at 3.

(quoting S. Rep. No. 94-803, pt. 1 at 63 (1976); H.R. Rep. No. 94-1373, at 5 (1976)).   Clearly,

this notification and waiting period is designed to ensure competition integrity between the two

merging companies is maintained through and until the merger is consummated.

41.   Companies that transfer "beneficial ownership" prior to consummation of the merger are

liable for gun-jumping[9] and face civil penalties under 15 U.S.C. § 18 (g)(1), adjusted under 16

C.F.R. § 1.98.[10]   Defendants cannot dispute that Section 7A prohibits gun-jumping or the

transfer of beneficial ownership prior to the merger's consummation. Moreover, Defendants

cannot argue that the HSR Act or Section 7A does not clearly reflect a public policy prohibiting

gun-jumping or transfer of beneficial ownership prior to a merger's consummation.   REDACT

---

[9] The United States Department of Justice, in a published settle agreement, has stated "Merging parties must comply with their antitrust obligations and continue to operate independently pending consummation of their transaction …The Department views gun-jumping as a serious matter and will proceed against parties who fail to respect the law with regard to preconsummation conduct." available at: https://www.justice.gov/archive/atr/public/press_releases/2002/11029.htm (last visited March 28, 2021).

[10]   While Defendants seek to make light of Plaintiff's allegations, if found liable MOFO's client faced fines upward of $15,141,660 (amount calculated based on 16 C.F.R § 1.98. (2018) accrual rate of $41,484 for each day a party remained in violation (365 x $41,484)).   Of note, as of January 13, 2021 this daily amount increased to $43,792.

REDACT

REDACT

41. Plaintiff has alleged this disclosed information was competitively sensitive. Prior United States Department of Justice enforcement actions have shown the government's strong interest in going after merger parties who coordinate their conduct during the HSR waiting period or who exchange competitively sensitive information prior to consummation of the merger.[11] With such hefty fines for exchanging competitively sensitive information the HSR Act clearly is intended to prohibit the disclosure of competitively sensitive information.   This is the exact conduct that Plaintiff complained about to his supervisors at MOFO and was wrongfully discharged within a week of reporting the violation. This portion of Defendants' argument must also fail.

**B.   INDIVIDUAL DEFENDANTS**

　　1.   42 U.S.C.A § 1981 Equal Rights Under the Law

42.   Defendants' argue in their MTD_TAC that Plaintiff's TAC does not support a Title 42 U.S..C.A.,§ 1981 claim against the Individual Defendants because 1) "Plaintiff fails to plausibly allege that Mr. Harris, Ms. Fleming Nolen, or Ms. Ayala acted as his supervisor for purposes of Section 1981" and 2) Plaintiff did not allege the Individual Defendants were "personally involved in the allegedly adverse acts that underpin his claims".   MTD_TAC at 22-23.

---

[11] In *U.S. v. Flakeboard America et al.*, Case No. 3:14-cv-4949, as part of their complaint DOJ alleged "In the period leading up to the Springfield closure announcement, SierraPine gave Flakeboard competitively sensitive information about Springfield's customers" available at https://www.justice.gov/atr/case-document/file/496511/download (last visited March 28, 2021). A settlement was reached and Defendants were ordered to pay $3.8 million in fines and an additional $1.5 million in disgorgement. Available at https://www.justice.gov/atr/case-document/file/496471/download (last visited March 28, 2021). Also *See*, PLA_EX_1 at 12.

43.  Plaintiff's TAC renders Defendants' arguments moot.    As Defendants have done throughout their MTD_TAC, they have conspicuously omitted language in the Plaintiff's TAC that defeat their arguments.    First, as to "supervisory authority", Plaintiff has done more than allege the Individual Defendants exercised "supervisory authority" over the Plaintiff; he provided the Court with direct evidence of such authority.  TAC at 32-33; n.22.

44.  Additionally, which need not carry the day, Plaintiff has referenced Mr. Harris, Ms. Fleming-Nolen, and Ms. Ayala as having supervisory authority six, two, and four times, respectively.  These individuals were the only employees, not contractors, of either Corporate Defendant that Plaintiff interacted with from his initial hire date through and until his unlawful discharge. If Individual Defendants did not exercise "supervisory authority" over the Plaintiff than Corporate Defendants allowed Plaintiff to be unsupervised during his employment.

45.  Next Defendants argue Plaintiff has failed to allege that any of the Individual Defendants were "personally involved in the alleged adverse acts that underpin his claims".  MTD_TAC at 23. Not only do Defendants omit arguments and language in Plaintiff's TAC that defeat their argument, but Defendants also again seek to turn the pleading requirements of a prima facie case into a "rigid, mechanized, or ritualistic" undertaking, contrary to well-settled law.". *Swierkiewicz,* at 512.

46.  Plaintiff has alleged "Mr. Harris and Mrs. Natalie A. Fleming Nolen, MOFO Partner, directed Plaintiff to work on integration calls not previously assigned to specific integration team members . . . [and] Plaintiff was not assigned to a particular workstream as was customary for team members until on or about September 20, 2019.".  TAC ¶ 22.

47.  Plaintiff's allegations certainly personally attach Mr. Harris and Ms. Nolen to the "alleged adverse acts that underpin [Plaintiff's] claims".  Without the benefit of discovery to provide

specific emails showing that Mr. Harris or Ms. Nolan "directed" or "told" or "caused" Plaintiff

not to be assigned to a particular workstream, Plaintiff's pleading is more than sufficient to meet

Fed Rule Civ. Proc. 8(a)(2) requirements of "a short and plain statement of the claim showing

that the pleader is entitled to relief,". *Id.*

48.   Defendants' argument that Plaintiff failed to show Ms. Ayala's personal involvement "in

the allegedly adverse acts that underpin his claims" is more suspect than the arguments put forth

for the other Individual Defendants.   In his TAC, Plaintiff provides direct evidence of Ms.

Ayala's personal involvement in denying Plaintiff the right to work remotely.   TAC ¶ 58; TAC

PLA_EXHIBIT 5.

49.   Additionally, Plaintiff has alleged that similarly-situated non-protected class members were

treated differently, thereby raising an inference of discrimination. TAC PLA EXHIBIT 4.

Accordingly, Defendants arguments fail and Plaintiff's Section 1981 claims against Individual

Defendants should proceed forward.

   2.   42 U.S.C.A § 1981 - Hostile Work Environment - No Tangible Employment Action
        Individual Defendants

50. Plaintiff's arguments put forth in his 42 U.S.C.A § 1981 Equal Rights Under the Law -

Individual Defendants Cause of Action alleged above are equally applied to his 42 U.S.C.A. §

1981 Hostile Work Environment - No Tangible Employment Action Cause of Action.  As

asserted in his TAC ¶ at 176, the requirements necessary to plead a Title 42 U.S.C. A. § 2000e-

2(a)(1) a claim uses the same standard under § 1981.   As such Defendants' motion to dismiss

this Cause of Action must also fail.

18

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves this Court to deny Defendants' Motion to Dismiss.  Alternatively, Plaintiff requests if the motion is granted it is granted without prejudice so Plaintiff can amend his Complaint.

Respectfully, this March 29, 2021.

By: _____

Junius Joyner, III, Esq.
Plaintiff *Pro Se,*
2220 Henry Watts Loop
Woodbridge, VA 22191

19

1

CERTIFICATE OF SERVICE

2

I hereby certify that on the 29th day of March 2021 a true copy of the **PLAINTIFF'S**

3

4

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD**

5

**AMENDED COMPLAINT** was mailed first-class to Defendant's counsel, Christopher E.

6

Humber, 1909 K Street, N.W., Suite 1000, Washington, D.C. 20006, along with an electronic

7

copy sent to chris.humber@ogletree.com.

8

9

This day March 29, 2021.

10

11

By:

12

13

Junius Joyner, III. Esq.
Plaintiff *Pro Se.*

14

2220 Henry Watts Loop
Woodbridge, VA 22191

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20